Filed 12/21/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S231260 |
| v. | ) | |
| | ) | Ct.App. 2/6 B257357 |
| SULMA MARILYN GALLARDO, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. VA126705-01 |
| _____ | ) | |

Defendant Sulma Marilyn Gallardo was convicted of various offenses including second degree robbery and transportation of a controlled substance. Although her offenses would ordinarily be punishable by a maximum term of imprisonment of six years, the prosecution sought an increased sentence on the ground that defendant had previously been convicted of a "serious felony" under Penal Code section 667, subdivision (a), that was also a strike for purposes of the "Three Strikes" law. The conviction in question was for a crime—assault with a deadly weapon or with force likely to produce great bodily injury, in violation of Penal Code former section 245, subdivision (a)—whose statutory definition sweeps more broadly than the definition of "serious felony": An assault conviction qualifies as a serious felony if the assault was committed with a deadly weapon, but not otherwise. After reviewing the transcript of the preliminary hearing in defendant's assault case, the trial court determined that defendant did,

**SEE CONCURRING AND DISSENTING OPINION**

in fact, commit the assault with a deadly weapon, and sentenced defendant to a term of 11 years in prison.

Under the Sixth Amendment to the United States Constitution, as interpreted in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), any fact, other than the fact of a prior conviction, that increases the statutorily authorized penalty for a crime must be found by a jury beyond a reasonable doubt. Defendant contends that her increased sentence rests on an exercise in judicial factfinding that violated her Sixth Amendment right to a jury trial.

We considered a similar issue more than a decade ago, in *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*). In *McGee*, we held that the Sixth Amendment permits courts to review the record of a defendant's prior conviction to determine whether the crime qualifies as a serious felony for purposes of the sentencing laws. Although we made clear that the inquiry is a "limited one" that "focus[es] on the elements of the offense of which the defendant was convicted," we also said that a court may review the record to determine whether "the conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*Id.* at p. 706.) We acknowledged, however, that continued examination of the scope of the rule announced in *Apprendi*—then still a relatively recent development in the high court's jurisprudence—might one day call for reconsideration of this approach. (*Id.* at p. 686.)

Defendant argues that day has now arrived. Specifically, she contends that the approach approved in *McGee* should be reconsidered in light of the high court's recent decisions in *Descamps v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2276] (*Descamps*) and *Mathis v. United States* (2016) 579 U.S. ___ [136 S.Ct. 2243] (*Mathis*), which, in her view, make clear that the Sixth Amendment forbids a sentencing court from reviewing preliminary hearing testimony to

2

determine what conduct likely (or "realistically") supported the defendant's conviction.

We agree that it is time to reconsider *McGee*. Although the holdings of *Descamps* and *Mathis* both concern the proper interpretation of a federal statute not at issue here, their discussions of background Sixth Amendment principles pointedly reveal the limits of a judge's authority to make the findings necessary to characterize a prior conviction as a serious felony. The cases make clear that when the criminal law imposes added punishment based on findings about the facts underlying a defendant's prior conviction, "[t]he Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.) While a sentencing court is permitted to identify those facts that were already necessarily found by a prior jury in rendering a guilty verdict or admitted by the defendant in entering a guilty plea, the court may not rely on its own independent review of record evidence to determine what conduct "realistically" led to the defendant's conviction. Here, the trial court violated defendant's Sixth Amendment right to a jury trial when it found a disputed fact about the conduct underlying defendant's assault conviction that had not been established by virtue of the conviction itself. We disapprove *People v. McGee*, *supra*, 38 Cal.4th 682, insofar as it suggests that the trial court's factfinding was constitutionally permissible.

## I.

In April 2014, a jury found defendant guilty of robbery (Pen. Code, § 211), being an accessory after the fact (*id.*, § 32), and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)). The jury also found true an allegation that a principal was armed with a firearm during the commission of the robbery (Pen. Code, § 12022, subd. (a)(1)).

3

The criminal information alleged that defendant had a 2005 conviction for assault with a deadly weapon or with force likely to produce great bodily injury (Pen. Code, former section § 245, subd. (a)(1)).[1] It further alleged that this conviction qualified as a "serious felony" conviction for purposes of Penal Code section 667, subdivision (a)(1). Under that provision, a criminal defendant who commits a felony offense after a prior conviction for a "serious felony" is subject to a five-year sentence enhancement. A "serious felony" conviction is also a prior strike for purposes of the Three Strikes law, which requires a second-strike defendant to be sentenced to double the otherwise applicable prison term for his or her current felony conviction. (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) The term "serious felony" is defined to include "assault with a deadly weapon." (Pen. Code, § 1192.7, subd. (c)(31).) If defendant committed assault with a deadly weapon, the prior conviction counted as a strike; if she committed assault by any means of force likely to produce great bodily injury, it did not. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.)

For some time, California cases have held that such determinations are to be made by the court, rather than by the jury, based on a review of the record of the prior criminal proceeding. (*McGee*, *supra*, 38 Cal.4th at p. 685; see *id.* at p. 691 [citing cases].) A defendant does, however, have a statutory right to a jury trial on "the question of whether or not the defendant has suffered the prior conviction"—though not "whether the defendant is the person who has suffered the prior conviction." (Pen. Code, § 1025, subds. (b) & (c); see also *id.*, § 1158.)

---

[1] Penal Code section 245, subdivision (a), has since been amended to separate the prohibitions against assault "with a deadly weapon" and assault "by any means of force likely to produce great bodily injury" into different subdivisions. (Stats. 2011, ch. 183, § 1, p. 2394.)

4

Defendant waived her right to a jury trial on prior convictions. She did not stipulate to the prior conviction, but she did stipulate to identity.

To determine whether defendant's assault conviction qualified as a "serious felony," the trial court examined the preliminary hearing transcript from the underlying proceeding. At the hearing, the victim testified that defendant had "tried to scare me with the knife," "push[ed] me aggressively to get me away from the car," and "punched me on the face, on the forehead . . . ." Relying on this testimony, the trial court concluded that defendant had, in fact, been convicted of "assault with a deadly weapon; to wit, knife." The court sentenced defendant to the middle term of three years for the robbery conviction, which was doubled based on the strike, with a five-year enhancement for a prior serious felony conviction, for a total of 11 years. The court also imposed a one-year term for the marijuana transportation conviction, doubled based on the strike, and ordered it to run concurrent to the principal term. The court stayed the firearm enhancement.

The Court of Appeal reversed the accessory conviction but otherwise affirmed. It rejected defendant's argument that the trial court's finding that she committed her prior assault offense with a deadly weapon abridged her Sixth Amendment right to have a jury, unanimously and beyond a reasonable doubt, find the facts that made her prior assault conviction a serious felony. The Court of Appeal explained that defendant had waived her right to a jury trial on the prior conviction allegations, and, in any event, the trial court's ruling was consistent with the rule approved in *McGee*. The court further concluded that nothing in the high court's recent decision in *Descamps* had called into question whether a trial court may consult a preliminary hearing transcript, as the trial court did here, to determine the nature of a prior conviction.

In contrast to the court below, several Courts of Appeal have concluded that the approach approved in *McGee* is incompatible with the understanding of

5

the reach of the Sixth Amendment reflected in the United States Supreme Court's opinions in *Descamps* and *Mathis*. (See *People v. Eslava* (2016) 5 Cal.App.5th 498, 509–510 [collecting appellate decisions reaching the same conclusion], review granted Feb. 15, 2017, S239061 (*Eslava*); see also *People v. Wilson* (2013) 219 Cal.App.4th 500, 516 [holding that, under both *Descamps* and *McGee*, "[a] court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense"].) We granted review to consider the issue.

## II.

Before we turn to the merits, we must first consider a threshold matter. The Attorney General argues that defendant may not now be heard to object to the trial court's decision on Sixth Amendment grounds because she (a) waived her right to a jury trial on the prior conviction allegations, and (b) failed to raise her constitutional objection in the trial court. We address each argument in turn.

We begin with the jury trial waiver. At the time of defendant's trial, California law made clear that a defendant's right to a jury trial extended only to "the question of whether or not the defendant has suffered the prior conviction." (Pen. Code, § 1025, subd. (b); see *id.*, § 1158; see also *People v. Epps* (2001) 25 Cal.4th 19, 23 ["The right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution."].) *McGee* had clearly established that defendant had no right to a jury determination of whether her prior conviction qualified as a serious felony for purposes of the sentencing laws. (*McGee*, *supra*, 38 Cal.4th at p. 685.) Of course, by the time defendant was sentenced, *Descamps* had been decided, and some litigants might well have recognized that the high court's decision would call *McGee* into doubt. But the parties in this case never discussed the effect of *Descamps* on *McGee*. Under the circumstances, defendant's jury trial waiver is most naturally

6

understood as a waiver of the limited statutory right to have a jury decide whether she had suffered the prior assault conviction. It is not reasonably understood as a waiver of any constitutional right to have a jury make the findings necessary to determine whether her prior conviction was a serious felony, much less as an abandonment of her argument about the limits of the court's factfinding powers as illuminated by *Descamps*. (Cf. *People v. French* (2008) 43 Cal.4th 36, 48 ["Defendant's waiver of jury trial on the offenses in connection with his no contest plea cannot reasonably be interpreted to extend to proof of aggravating circumstances when, at the time of the plea, no right to a jury trial on such circumstances had been recognized."].)

It is a separate question whether defendant forfeited her Sixth Amendment challenge by failing to raise the issue in the trial court. Although defendant did object to the trial court's consideration of the preliminary hearing transcript on evidentiary grounds, she did not raise the Sixth Amendment argument she presses here. But that is not always the end of the matter. We have previously " 'excused [] failure[s] to object [on a particular ground] where to require defense counsel to raise [that] objection "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule . . . would be changed on appeal." ' " (*People v. Williams* (1976) 16 Cal.3d 663, 667, fn. 4, quoting *People v. De Santiago* (1969) 71 Cal.2d 18, 23; see, e.g., *People v. Rangel* (2016) 62 Cal.4th 1192, 1215.) Here, as previously noted, at the time defendant was sentenced, California law allowed a trial court to look to a preliminary hearing transcript to determine whether a defendant's prior conviction was "realistically" a serious felony. To be sure, *Descamps*, which forms the centerpiece of defendant's argument to this court, had been decided by the time of defendant's sentencing. But *Descamps* did not squarely overrule existing California law; it discussed the

7

relevant Sixth Amendment principles only en route to construing the federal statute at issue to avoid constitutional concerns.  (*Descamps*, *supra*, 133 S.Ct. at pp. 2287–2289.)  It is at least questionable whether defendant should be made to bear the burden of anticipating potential changes in the law based on the reasoning of a United States Supreme Court opinion addressed to the proper interpretation of a federal statute not at issue here.

But we need not resolve that question, for the simple reason that the Attorney General did not make his forfeiture argument to the Court of Appeal and the Court of Appeal did not address it.  Forfeiture is not a jurisdictional doctrine, and we are under no obligation to address a forfeiture argument that was neither raised nor addressed below.  (Cf. *People v. Braxton* (2004) 34 Cal.4th 798, 809.)  We therefore proceed to the merits.

## III.

## A.

The Sixth Amendment to the United States Constitution, together with the Fourteenth Amendment, "entitle[s] a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' "  (*Apprendi*, *supra*, 530 U.S. at p. 477.)  In *Apprendi*, the United States Supreme Court held that the Sixth Amendment right to jury trial extends to those disputed facts that may not be formally designated as "elements" of the offense, but nevertheless expose the defendant to additional punishment. (*Id.* at pp. 476–490.)  The court, however, recognized a "limited exception" for the " 'fact' of prior conviction."  (*Id.* at p. 488 & fn. 14, citing *Almendarez-Torres v. United States* (1998) 523 U.S. 224.)  The court explained that "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and

8

allowing the judge to find the required fact under a lesser standard of proof."
(*Apprendi*, *supra*, at p. 496.)

In the wake of *Apprendi*, questions arose about the scope of the so-called *Almendarez-Torres* exception to the general Sixth Amendment rule forbidding judicial factfinding in criminal cases. This court addressed the issue in *McGee*, *supra*, 38 Cal.4th 682. The defendant in *McGee* had been charged with various crimes in connection with an armed robbery and shooting, and the prosecution sought increased punishment based on the defendant's prior convictions for robbery in Nevada state court, which the prosecution contended qualified as serious felonies for purposes of the sentencing laws. The statutory definition of "serious felony" includes "robbery" as defined by California law. (Pen. Code, §§ 1170.12, subd. (b)(1), 1192.7, subd. (c)(19).) But Nevada's robbery law was broader in certain respects than California's. (*McGee*, *supra*, 38 Cal.4th at p. 688.) It therefore "was at least theoretically possible that defendant's Nevada convictions involved conduct that would not constitute robbery under California law" and thus would not qualify as serious felonies. (*Ibid.*) To determine whether the defendant's prior convictions were strikes, the trial court examined preliminary hearing transcripts from the two Nevada proceedings and reviewed the victims' testimony describing the defendant's conduct during each robbery. It also examined the defendant's admissions in connection with the taking of his pleas of guilty in both cases. Based on these materials, the trial court concluded that each of the Nevada convictions was based on conduct that would also have constituted robbery under California law, and therefore qualified as serious felonies. (*Id.* at p. 690.)

The defendant contended that the trial court's determination violated the Sixth Amendment as it had been interpreted in *Apprendi*. We rejected the argument. Before *Apprendi*, we explained, our cases had held that such

9

determinations are to be made by judges, rather than juries, on the basis of the record of the prior criminal proceeding. (*McGee*, *supra*, 38 Cal.4th at p. 691, citing *People v. Woodell* (1998) 17 Cal.4th 448, 459 (*Woodell*), and *People v. Guerrero* (1988) 44 Cal.3d 343, 355 (*Guerrero*).) These cases had explained that " '[b]ecause the nature of the *conviction* is at issue, the prosecution is not allowed to go outside the record of conviction to "relitigat[e] the circumstances of a crime committed years ago . . . ." ' (Citations.)" (*McGee*, at p. 691, quoting *Guerrero*, 44 Cal.3d at p. 355.) But operating within the confines of the record of conviction, we said, it is for the court to determine "the nature or basis of the crime of which the defendant was convicted." (*Ibid.*) A court must conduct the inquiry "with a focus on the elements of the offense of which the defendant was convicted," but "[i]f the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law."[2] (*Id.* at p. 706, citing *Woodell*, *supra*, 17 Cal.4th at pp. 452–461.) We did not specifically address what types of materials a judge may consult in conducting this inquiry, but we cited with approval a prior case holding that the materials available for consultation include preliminary hearing transcripts. (See *McGee*, at p. 694, citing *People v. Reed* (1996) 13 Cal.4th 217, 220.) The trial court in *McGee* itself had consulted preliminary hearing transcripts, among other materials, in making its determination.

---

[2]     In *Guerrero*, this court overruled *People v. Alfaro* (1986) 42 Cal.3d 627, which had held that this inquiry is limited to "matters necessarily established by the prior conviction." (*Id.* at p. 629; see *Guerrero*, *supra*, 44 Cal.3d at pp. 345, 355–356.)

We concluded in *McGee* that the approach adopted in these prior cases was not inconsistent with *Apprendi*. *Apprendi*, we noted, preserved the *Almendarez-Torres* exception for "the fact of a prior conviction" (*Apprendi*, *supra*, 530 U.S. at p. 490). (*McGee*, *supra*, 38 Cal.4th at pp. 706–707.) And identifying the "fact of a prior conviction," we reasoned, necessarily entails a limited inquiry into the "nature or basis of the crime of which the defendant was convicted." (*Id.* at p. 691.) We went on to explain: "The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that *the conviction* is of the type that subjects the defendant to increased punishment under California law. This is an inquiry that is quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court." (*Id.* at p. 706.)

While *McGee* was pending in this court, the United States Supreme Court issued its decision in *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard*). The question in *Shepard* concerned the interpretation of the Armed Career Criminal Act of 1984 (ACCA) (18 U.S.C. § 924(e)), a federal sentencing statute that prescribes increased penalties for certain firearm offenses if the defendant has three or more prior convictions for specified offenses, including "burglary," understood generically to refer to an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." (*Taylor v. United States* (1990) 495 U.S. 575, 599 (*Taylor*).) To determine whether a particular state burglary offense qualifies as generic burglary for ACCA purposes, the high court had adopted the so-called categorical approach, under which a court looks "only to the fact of conviction and the statutory definition of the prior

offense," rather than "delving into particular facts disclosed by the record of conviction." (*Id.* at p. 602; *Shepard*, *supra*, at p. 17.) In *Shepard*, the high court set out what has since come to be known as the modified categorical approach, which permits courts to review certain documents underlying the conviction to determine what facts were necessarily found, or admitted, to determine whether the defendant was convicted of a version of a broadly defined offense that corresponds to generic burglary under the ACCA. This approach permits courts to review materials such as charging documents, jury instructions, and any agreed-to factual basis for a guilty plea, but does not permit a court to make findings about the real conduct underlying the conviction based on police reports or complaint applications. (*Shepard*, *supra*, at pp. 22–23, 26.)

Writing for a plurality of the members of the court, Justice Souter invoked constitutional considerations as reinforcement for the modified categorical approach. To permit a judge to "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea . . . raises the concern underlying . . . *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." (*Shepard*, *supra*, 544 U.S. at p. 25.) While a disputed fact about the manner in which a crime was committed might in some sense be "described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to . . . *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." (*Shepard*, at p. 25.) Justice Thomas, who joined the remainder of the opinion, did not join this portion. He instead wrote separately to express the view that permitting judges to find disputed facts about the nature of the defendant's burglary offense would not merely raise serious Sixth Amendment

12

questions, but would actually violate the Sixth Amendment. (*Id.* at p. 28 (conc. opn. of Thomas, J.).)

We acknowledged in *McGee* that "the *Shepard* decision may suggest that a majority of the high court" would view California's existing approach to the permissible scope of judicial factfinding as "presenting a serious constitutional issue." (*McGee*, *supra*, 38 Cal.4th at p. 708.) But because the high court had not purported to decide the case on constitutional grounds, we concluded that "*Shepard* does not provide the type of clear resolution of the issue that would justify overturning the relevant California precedents." (*McGee*, at p. 708.)

Justice Kennard dissented. In her view, when a trial court examines the record of conviction in an attempt to discern " 'whether the conviction realistically may have been based on *conduct* that would not constitute a felony under California law,' " it is necessarily making a determination that properly belongs to a jury, not a judge. (*McGee*, *supra*, 38 Cal.4th at pp. 714–715 (dis. opn. of Kennard, J.); *id.* at p. 710.)

**B.**

Much as the court anticipated in *McGee*, *Shepard* was not the high court's final word on the scope of the *Almendarez-Torres* exception to the *Apprendi* rule. Some 10 years later, in *Descamps* and *Mathis*, the high court again addressed the issue. The high court's discussions are persuasive evidence that the *Almendarez-Torres* exception is narrower than *McGee* had supposed.

The question in *Descamps* concerned whether a California burglary conviction qualified as a generic burglary conviction for purposes of the ACCA. (*Descamps*, *supra*, 133 S.Ct. at pp. 2281–2282.) Because the California burglary statute, Penal Code section 459, does not require proof of unlawful or unprivileged entry, it proscribes a broader range of conduct than generic burglary. (*Descamps*, at pp. 2285–2286.) To determine whether the defendant's section 459 conviction

13

nevertheless qualified as a burglary conviction for ACCA purposes, the trial court reviewed a transcript of the defendant's plea colloquy, in which the prosecutor stated that "the crime ' "involve[d] the breaking and entering of a grocery store." ' " (*Id.* at p. 2282.) The defendant had not objected to that statement before entering his plea, and the trial court relied on it in concluding that the burglary conviction did, in fact, involve an unlawful entry and therefore was a generic burglary conviction for purposes of the federal sentence enhancement. (*Ibid.*) The court of appeals affirmed, but the high court reversed. As in *Shepard*, the question before the high court was one of statutory interpretation: May a sentencing court apply the modified categorical approach when a defendant was convicted under an " 'indivisible' statute—i.e., one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense" under the ACCA? (*Id.* at p. 2281.) The high court answered that question in the negative. It explained that because California's burglary statute is not divided into *lawful* entry and *unlawful* entry alternatives, the prosecutor's reference to defendant's breaking and entering was simply gratuitous; no legal consequence flowed from the fact that defendant may have broken and entered the establishment. (*Id.* at pp. 2285–2286.) Such extraneous facts, the high court ruled, could play no role in the sentencing court's efforts to determine whether the conviction qualified as an ACCA predicate offense. (*Id.* at p. 2286.)

Although this holding was grounded in the court's ACCA jurisprudence, the court also drew on Sixth Amendment principles. The lower court's decisions, the high court explained, failed to consider "the categorical approach's Sixth Amendment underpinnings." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.) The court of appeals had sanctioned an approach that permits trial courts "to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." (*Ibid.*) But "[t]he Sixth Amendment contemplates that a jury—not a

14

sentencing court—will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances." (*Ibid.*)

In *Mathis*, *supra*, 136 S.Ct. 2243, the high court considered yet another iteration of the question of when burglary is burglary for ACCA purposes. At issue was a conviction entered under an Iowa statute that state courts had interpreted to set out multiple means of satisfying a single element, some of which corresponded to the generic federal definition of burglary and some of which did not. While Iowa burglary can be committed by means of unlawful entry into " 'any building, structure, *[or] land, water, or air vehicle,*' " generic burglary for ACCA purposes is limited to unlawful entry into a " 'building or other structure.' " (*Id.* at p. 2250.) After reviewing the records of the defendant's prior convictions, the sentencing court determined the defendant had burgled buildings, rather than vehicles. The court of appeals affirmed, but the high court reversed, concluding that a court may not employ the modified categorical approach to identify the basis of a prior conviction under a statute that lists alternative means of establishing a single element of a crime, rather than alternative elements.

In so holding, the court grounded its decision in its line of cases interpreting the ACCA, but once again drew on Sixth Amendment principles to bolster its analysis. The court concluded that allowing courts to look to "old record materials" to determine whether a defendant had burgled a building or a vehicle would "raise serious Sixth Amendment concerns" because, under the Sixth Amendment, "a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense. [Citations.] He is prohibited from conducting such an inquiry himself; and so too he is barred from making a disputed determination about 'what the defendant and state judge

15

must have understood as the factual basis of the prior plea' or 'what the jury in a prior trial must have accepted as the theory of the crime.' " (*Mathis*, *supra*, 136 S.Ct. at pp. 2250, 2252.)[3]

## C.

The high court's description of the Sixth Amendment principle at work in these cases confirms what the dissenting opinion in *McGee* had already discerned. In short: "The Sixth Amendment contemplates that a jury—not a sentencing court—will find" the facts giving rise to a conviction, when those facts lead to the imposition of additional punishment under a recidivist sentencing scheme. (*Descamps*, 133 S.Ct. at p. 2288.) This means that a sentencing court may identify those facts it is "sure the jury . . . found" in rendering its guilty verdict, or those facts as to which the defendant waived the right of jury trial in entering a guilty plea. (*Ibid.*) But it may not "rely on its own finding" about the defendant's underlying conduct "to increase a defendant's maximum sentence." (*Id.* at p. 2289.)

We are persuaded that the approach sanctioned in *McGee* is no longer tenable insofar as it authorizes trial courts to make findings about the conduct that "realistically" gave rise to a defendant's prior conviction. The trial court's role is

---

[3] Although no member of the court disagreed with the majority's description of general Sixth Amendment principles, several justices expressed the view that the means/elements distinction is irrelevant to the Sixth Amendment analysis. (See *Mathis*, *supra*, 136 S.Ct. at p. 2258 ["In my view, *Apprendi* was incorrect and, in any event, does not compel the elements based approach. That approach is required only by the Court's statutory precedents, which Congress remains free to overturn."] (conc. opn. of Kennedy, J.); *id.* at p. 2265 [if the State charges only one of several alternative means of committing a crime, it must prove that fact to a jury beyond a reasonable doubt, and *Apprendi* is satisfied] (dis. opn. of Breyer, J., joined by Ginsburg, J.); *id.* at pp. 2269–2270 [noting substantial practical difficulties raised by the majority's approach] (dis. opn. of Alito, J.).)

16

limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in "judicial factfinding that goes far beyond the recognition of a prior conviction." (*Descamps*, *supra*, 133 S.Ct. at p. 2280.)

The Attorney General resists this conclusion. He argues that the constitutional analysis in *Descamps* and *Mathis* is no more authoritative than the constitutional analysis in *Shepard*, which we had considered, and dismissed, in *McGee*. We agree with him to this extent: It is true that *Descamps* and *Mathis*, like *Shepard*, were decided on statutory, rather than constitutional, grounds. This is to say, the high court did not hold that the Sixth Amendment, as opposed to the federal ACCA, forbids application of the so-called modified categorical approach when the statute of conviction has a single, "indivisible" set of elements (*Descamps*) or when it sets out alternative means, rather than alternative elements constituting the same crime (*Mathis*). And indeed, as counsel confirmed at oral argument, defendant here does not argue that California courts are constitutionally compelled to emulate the high court's version of the categorical approach in all of its particulars.

But the high court's interpretation of the relevant federal statute was informed by an understanding of certain basic, background Sixth Amendment principles, and the court's explication of those principles was both considered and unequivocal: The jury trial right is violated when a court adds extra punishment based on factfinding that goes "beyond merely identifying a prior conviction" by "tr[ying] to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.) We are persuaded, and we will follow the court's guidance.

The Attorney General also argues that, to the extent that *Descamps* and *Mathis* illuminate the relevant Sixth Amendment principles, those principles

17

should be understood as confined to the administration of a sentencing scheme that prescribes additional punishment based on the *elements* of the crime of which the defendant was convicted, as the high court has described the ACCA, rather than a scheme that characterizes the offense based on the underlying *conduct* that gave rise to the conviction, as this court has described California's Three Strikes law. (Compare *Descamps*, *supra*, 133 S.Ct. at p. 2287, citing *Taylor*, *supra*, 495 U.S. at p. 600, with, e.g., *People v. Avery* (2002) 27 Cal.4th 49, 53 [inquiry focuses on whether the defendant's conviction "involve[d] conduct that would qualify as a serious felony"].) Whatever the merits of the comparison, however, the distinction makes no difference for purposes of delimiting the constitutional bounds of judicial factfinding. "[I]n determining the truth of an alleged prior conviction when . . . the necessary elements of that conviction do not establish that it is a serious felony, and thus subject to California's Three Strikes law, the trier of fact must decide whether the defendant's conduct, as demonstrated in the record of the prior conviction, shows that the crime was a serious felony." (*McGee*, *supra*, 38 Cal.4th at pp. 714–715 (dis. opn. of Kennard, J.).) And when the sentencing court must rely on a finding regarding the defendant's conduct, but the jury did not necessarily make that finding (or the defendant did not admit to that fact), the defendant's Sixth Amendment rights are violated. (See *Apprendi*, *supra*, 530 U.S. at p. 490.)

The judicial factfinding permitted under the *Almendarez-Torres* exception does not extend "beyond the recognition of a prior conviction." (*Descamps*, *supra*, 133 S.Ct. at p. 2288.) Consistent with this principle, and with the benefit of further explication by the high court, we now hold that a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the "nature or basis" of the prior conviction based on its independent conclusions about what facts or conduct "realistically" supported the

18

conviction. (*McGee*, *supra*, 38 Cal.4th at p. 706.) That inquiry invades the jury's province by permitting the court to make disputed findings about "what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." (*Descamps*, *supra*, at p. 2288.) The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea.**4**

## IV.

Here, the trial court engaged in a form of factfinding that strayed beyond the bounds of the Sixth Amendment. Defendant had entered a plea of guilty to assault under a statute that, at the time, could be violated by committing assault either with a "deadly weapon" or "by any means of force likely to produce great bodily injury." (Pen. Code, former § 245, subd. (a)(1).) Defendant did not specify that she used a deadly weapon when entering her guilty plea. The trial court's sole basis for concluding that defendant used a deadly weapon was a transcript from a preliminary hearing at which the victim testified that defendant had used a knife during their altercation. Nothing in the record shows that defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea.

---

**4** Other state high courts to address the issue in the wake of *Descamps* have also concluded that the Sixth Amendment bars courts from finding facts about the conduct underlying a defendant's prior convictions. (*State v. Dickey* (2015) 301 Kan. 1018, 1039–1040; see also *Dorsey v. United States* (D.C.Ct.App. 2017) 154 A.3d 106, 124–126 [approving of trial court's comparison of foreign statute of conviction to D.C. equivalent based on elements alone]; *State v. Guarnero* (2015) 363 Wis.2d 857, 868–872 [approving of use of guilty plea to identify basis for defendant's prior conviction under federal statute of conviction where statute was divisible]; *State v. Olsen* (2014) 180 Wn.2d 468, 476–477 [approving of Washington's method of comparing foreign statutes of conviction to state equivalents for sentencing purposes].)

19

The Court of Appeal concluded this was permissible under *Descamps* because that decision allows trial courts to "consult 'a limited class of documents, such as indictments and jury instructions,' " in order to identify which elements of the statute "formed the basis of the prior conviction." Because "nothing in *Descamps* excludes the preliminary hearing transcript from that class of documents," the court concluded that the sentencing court properly used the transcript to determine that defendant's conviction was based on assault with a deadly weapon and thus qualified as a serious felony within the meaning of the Three Strikes law.

While *Descamps* does permit courts to rely on certain documents to identify the precise statutory basis for a prior conviction, the documents listed in *Descamps*—"indictments and jury instructions" (*Descamps*, *supra*, 133 S.Ct. at p. 2279)—differ from the preliminary hearing transcript here in a meaningful way. An indictment or jury instructions might help identify what facts a jury necessarily found in the prior proceeding. (See *Shepard*, *supra*, 544 U.S. at pp. 20–21.) But defendant's preliminary hearing transcript can reveal no such thing. A sentencing court reviewing that preliminary transcript has no way of knowing whether a jury would have credited the victim's testimony had the case gone to trial. And at least in the absence of any pertinent admissions, the sentencing court can only guess at whether, by pleading guilty to a violation of Penal Code section 245, subd. (a)(1), defendant was also acknowledging the truth of the testimony indicating that she had committed the assault with a knife.

By relying on the preliminary hearing transcript to determine the "nature or basis" of defendant's prior conviction, the sentencing court engaged in an impermissible inquiry to determine " 'what the defendant and state judge must have understood as the factual basis of the prior plea.' " (*Descamps*, *supra*, 133 S.Ct. at p. 2284.) Because the relevant facts were neither found by a jury nor

20

admitted by defendant when entering her guilty plea, they could not serve as the basis for defendant's increased sentence here.

## V.

The final question concerns next steps. The Attorney General argues that we should remand the case to permit the trial court to conduct a new hearing on the prior conviction allegations. On remand, the Attorney General contends, the inquiry would be "confined to the record of the prior plea proceedings," and the trial court would only "mak[e] a determination about what facts appellant necessarily admitted in entering her plea," without "relitigat[ing] the prior offense." In the alternative, the Attorney General argues that the case should be remanded for a jury trial on the prior conviction allegations. Defendant concedes the first remedy is appropriate; she vigorously opposes the jury trial alternative.

The Attorney General's request for a limited remand is reasonable, and we will grant it. We today hold that defendant's constitutional right to a jury trial sweeps more broadly than our case law previously recognized: While a trial court can determine the fact of a prior conviction without infringing on the defendant's Sixth Amendment rights, it cannot determine disputed facts about what conduct likely gave rise to the conviction. This is a development the parties apparently did not anticipate at the time this case was tried. (See pt. II, *ante*.)

We also agree with the parties that the appropriate course is to remand to permit the trial court to make the relevant determinations about what facts defendant admitted in entering her plea. Our precedent instructs that determinations about the nature of prior convictions are to be made by the court, rather than a jury, based on the record of conviction. (See *McGee*, *supra*, 38 Cal.4th at p. 695.) We have explained that the purpose of the latter limitation is to avoid forcing the parties to relitigate long-ago events, threatening defendants with "harm akin to double jeopardy and denial of speedy trial." (*Guerrero*, *supra*, 44

21

Cal.3d at p. 355.) The Attorney General has not asked us to reconsider this aspect of our precedent. His primary contention, rather, is that the trial court on remand should review the record of conviction in order to determine what facts were necessarily found or admitted in the prior proceeding. Such a procedure fully reconciles existing precedent with the requirements of the Sixth Amendment.

Justice Chin's concurring and dissenting opinion takes the view that we can instead reconcile *Guerrero* with the Sixth Amendment right to a jury trial by simply reassigning the task of reviewing the record of conviction to a jury, as opposed to a judge. This argument ventures beyond the Attorney General's own submission; although the Attorney General's second-choice option is to convene a jury trial, the Attorney General does not ask that the jury be limited to reviewing the record of conviction. And not without reason, because such a proceeding—in which a jury would be impaneled for the sole purpose of reading the preliminary hearing transcript in defendant's prior assault case—would raise significant constitutional concerns under *Apprendi*. The basic rationale of *Apprendi* is that facts that are used to increase the defendant's maximum possible sentence are the functional equivalent of elements of the offense, and they must be proved in the same way: i.e., at a trial before a jury, and beyond a reasonable doubt. (*Apprendi*, *supra*, 530 U.S. at pp. 476, 490.) To permit a jury to make factual findings based solely on its review of hearsay statements made in a preliminary hearing would be to permit facts about the defendant's prior conviction to be proved in a way that no other elemental fact is proved—that is, without the procedural safeguards, such as the Sixth Amendment right to cross-examine one's accusers, that normally apply

in criminal proceedings.**5**  This kind of proceeding might involve a jury, but it would not be much of a trial.**6**

---

**5**     Justice Chin's proposal relies on our pre-*Apprendi*, pre-*McGee* decision in *People v. Reed*, *supra*, 13 Cal.4th 217, which held that the prosecution could rely on preliminary hearing transcripts but not live witnesses to establish the nature of the defendant's prior conviction, but reserved the question of whether the defense would be permitted to introduce live testimony.  Shortly thereafter, a Court of Appeal answered that question in the negative, concluding that the logic of *Guerrero* bars both sides from calling live witnesses.  (*People v. Bartow* (1996) 46 Cal.App.4th 1573, 1580–1582.)

As already noted, the underlying rationale of *Guerrero*, on which *Reed* and *Bartow* both relied, is that the limitation to the record of conviction "effectively bars the prosecution from relitigating the circumstances of a crime committed years ago." (*Guerrero*, *supra*, 44 Cal.3d at p. 355.)  Justice Chin's proposal would instead appear to affirmatively authorize relitigation before a jury—so as to allow the jury to find the facts necessary for application of the Three Strikes law, as we now understand the Sixth Amendment requires—but based on a highly restricted universe of documentary evidence including hearsay statements contained in a preliminary hearing transcript.

Justice Chin says, however, that while the prosecution would be "limited" to reliance on the preliminary hearing transcript, defendant might be free to call witnesses if she chooses (notwithstanding *Bartow*).  But if the preliminary hearing witnesses are available to be called, then the prosecution may not introduce their preliminary hearing testimony without producing the witnesses for cross-examination.  (See *Crawford v. Washington* (2004) 541 U.S. 36, 53–54, 68.)  It is not an answer to say that defendant could call the preliminary hearing witnesses to the stand if she wished:  "[T]he Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." (*Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 324.)

**6**     As Justice Chin's concurring and dissenting opinion notes, some Courts of Appeal to consider the issue have concluded that the proper remedy for violating a defendant's Sixth Amendment right to a jury trial is to give that defendant a jury trial on facts underlying a prior conviction, but to limit the evidentiary scope of such a trial to the record of conviction.  (Dis. opn., *post*, at p. 5; see *Eslava*, *supra*, 5 Cal.App.5th at pp. 520–521, review granted; *People v. Marin* (2015) 240 Cal.App.4th 1344, 1366–1367.)  Other Courts of Appeal have ordered a jury trial without specifying such an evidentiary limitation.  (*People v. McCaw* (2016) 1 Cal.App.5th 471, 486–487, review granted Oct. 19, 2016, S236618.)  And still

*(Footnote continued on next page.)*

We thus remand the case, as both parties appear to acknowledge we should, to permit the People to demonstrate to the trial court, based on the record of the prior plea proceedings, that defendant's guilty plea encompassed a relevant admission about the nature of her crime.

## VI.

We reverse the judgment of the Court of Appeal and remand for a new determination on the prior conviction allegations in accordance with this opinion.


**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**HOFFSTADT, J.**\*

---

*(Footnote continued from previous page.)*

other Courts of Appeal appear to have concluded that questions about the proper characterization of a prior conviction are for a court to resolve, based on its evaluation of the facts necessarily encompassed by the guilty verdict or admitted by the defendant in pleading guilty to the prior crime. (See *People v. Navarette* (2016) 4 Cal.App.5th 829; *People v. Saez* (2015) 237 Cal.App.4th 1177.) The parties in this case appear to agree that the latter course is appropriate. For the reasons explained above, we agree as well.

\*        Associate Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING AND DISSENTING OPINION BY CHIN, J.**


I agree with much of the majority opinion. I agree that defendant has not waived or forfeited her contentions. (Maj. opn., *ante*, at pp. 6-8.) I also agree that under the rationale of *Descamps v. United States* (2013) 570 U.S. __ [133 S.Ct. 2276] (*Descamps*) and *Mathis v. United States* (2016) 579 U.S. __ [136 S.Ct. 2243] (*Mathis*), defendant has a right to a jury trial on the nature of her prior conviction. (Maj. opn., *ante*, at pp. 16-19.) Specifically, I agree that what the court here did — review the preliminary hearing transcript to find that the conviction was based on defendant's assault with a deadly weapon — "invade[d] the jury's province." (Maj. opn., *ante*, at p. 19.) To that extent, but only to that extent, *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*) is no longer good law.

I disagree, however, with the majority's remedy. It remands for a new, and very limited, *court* trial at which the court will not be permitted to engage in factfinding. (Maj. opn., *ante*, at pp. 21-24.) But the remand should be for a *jury* trial. The proper remedy for a violation of defendant's jury trial right is to give her that jury trial.

The difference between remanding for a court trial and remanding for a jury trial is critical. As the majority concludes, and I agree, the court may not engage in factfinding. Doing so invades the jury's province. But the jury *may* engage in factfinding. That is what juries do. As the majority explains, "when the criminal law imposes added punishment based on findings about the facts underlying a

1

defendant's prior conviction, '[t]he Sixth Amendment contemplates that a jury —
not a sentencing court — will find such facts, unanimously and beyond a
reasonable doubt.' " (Maj. opn., *ante*, at p. 3, quoting *Descamps*, *supra*, 570 U.S.
__ [133 S.Ct. at p. 2288].)

It has long been settled that the trier of fact — it used to be the court but
now must be the jury — may "look to the record of the conviction — *but no
further*" to determine the conduct underlying the conviction. (*People v. Guerrero*
(1988) 44 Cal.3d 343, 355.) It is equally settled that the record of conviction to
which the trier of fact may look includes the transcript of the preliminary hearing.
(*People v. Reed* (1996) 13 Cal.4th 217, 220 (*Reed*); see maj. opn., *ante*, at p. 10.)
The court here reviewed the preliminary hearing transcript and determined that
defendant's prior conviction was a serious felony and thus a strike under the
"Three Strikes" law. (Maj. opn., *ante*, at pp. 1-2, 5.)

On remand, the jury should be allowed to do the same thing the court did
and, if it so finds unanimously and beyond a reasonable doubt, reach the same
result — that defendant's prior conviction was based on assault with a deadly
weapon and is thus a strike. Remanding for another court trial, but without the
ability to make factual findings, improperly precludes this possibility.

As the majority recognizes, we have interpreted California's recidivist
statutes differently than the statutory scheme at issue in *Descamps, supra*, 570 U.S.
__ [133 S.Ct. 2276] and *Mathis, supra*, 579 U.S. __ [136 S.Ct. 2243]. The high
court interpreted the scheme it considered as strictly elements based; the underlying
conduct is irrelevant. But in California, the trier of fact examines the *conduct*
underlying the conviction to determine whether it qualifies as a strike, although the
examination is limited to the record of conviction. (*McGee*, *supra*, 38 Cal.4th at p.
706; *Reed*, *supra*, 13 Cal.4th at pp. 222-223; *People v. Guerrero*, *supra*, 44 Cal.3d
at p. 355; see maj. opn., *ante*, at pp. 10-11.) As the majority also correctly

recognizes, "California courts are [not] constitutionally compelled to emulate the high court's version of the categorical approach in all of its particulars." (Maj. opn., *ante*, at p. 17.) California's conduct-based approach remains valid, except that now the jury, not the court, must make the determination.

Both *Descamps* and *Mathis* make clear that a conduct-based approach is permissible. (*Descamps*, *supra*, 570 U.S. at p. __ [133 S.Ct. at p. 2287] ["If Congress had wanted to increase a sentence based on the facts of a prior offense, it presumably would have said so; other statutes, in other contexts, speak in just that way," citing *Nijhawan v. Holder* (2009) 557 U.S. 29, 36 (*Nijhawan*)]; *Mathis*, *supra*, 579 U.S. at p. __ [136 S.Ct. at p. 2252] ["Congress well knows how to instruct sentencing judges to look into the facts of prior crimes: In other statutes, using different language, it has done just that," citing *Nijhawan* at p. 36 and *United States v. Hayes* (2009) 555 U.S. 415, 421 (*Hayes*)].)

In *Nijhawan*, the high court held that an immigration statute "does not refer to an element of the fraud or deceit crime [the crime at issue]. Rather it refers to the particular circumstances in which an offender committed a (more broadly defined) fraud or deceit crime on a particular occasion." (*Nijhawan*, *supra*, 557 U.S. at p. 32; see *id*. at p. 36.) *Nijhawan* was a *deportation* case, not, like here, a criminal case; as the high court noted, "the Government does not have to prove its claim 'beyond a reasonable doubt.' " (*Id*. at p. 42.) Accordingly, that case might not govern here.

But *Hayes* was a *criminal* prosecution. An indictment charged the defendant with "possessing firearms after having been convicted of a misdemeanor crime of domestic violence." (*Hayes*, *supra*, 555 U.S. at p. 419.) The statute the defendant was charged under prohibits a person convicted of " 'a misdemeanor crime of domestic violence' " from possessing a firearm. (*Id*. at p. 418.) The high court held "that the domestic relationship, although it must be

3

established beyond a reasonable doubt in a . . . firearms possession prosecution, need not be a defining element of the predicate offense." (*Ibid*.)  It explained that the Government may "charge and prove a prior conviction that was, *in fact*, for 'an offense . . . committed by' the defendant against a spouse or other domestic victim." (*Id*. at p. 421, italics added.)  Accordingly, to obtain a conviction, "the Government must prove beyond a reasonable doubt that the victim of the predicate offense was the defendant's current or former spouse or was related to the defendant in another specified way.  But that relationship, while it must be established, need not be denominated an element of the predicate offense." (*Id*. at p. 426.)

In *Hayes*, after the defendant's motion to dismiss the indictment was denied, he "entered a conditional guilty plea and appealed." (*Hayes*, *supra*, 555 U.S. at p. 420.)  Because of the guilty plea, the high court did not explain exactly how the prosecution was to prove the domestic relationship underlying the predicate crime.  Presumably, the trial would be before a jury, not a court. Whether, as in California, the prosecution would be limited to the record of conviction is not clear.  (See *United States v. Hill* (8th Cir. 2016) 820 F.3d 1003, 1005 [agreeing with the government that, in a prosecution for failure to register as a sex offender, the prosecution may present "any reliable evidence" regarding the nature of the predicate offense].)

*Mathis* and *Descamps* require us now to have a jury review the record of conviction to determine whether the conviction was based on conduct that qualifies it as a strike.  But those cases do no more.  They do not affect the rest of our longstanding jurisprudence.  A jury may review the record of conviction, including the transcript of the preliminary hearing, to determine whether defendant's prior conviction was based on assault with a deadly weapon.

4

Other courts have remanded for a jury trial in similar circumstances. In *People v. Eslava* (2016) 5 Cal.App.5th 498, review granted February 15, 2017, S239061, the court held, as does this court today, that the defendant was entitled to a jury trial regarding the nature of the prior conviction. But it also held the remedy for violating the defendant's right to a jury trial was to give him that jury trial. It remanded for a jury trial. It "conclude[d] that Eslava has a Sixth Amendment right to have a jury resolve the issue. *Descamps* and *Mathis* prevent a court from looking at the record of conviction and drawing the factual inference that Eslava admitted inflicting serious bodily injury on [the victim], but those cases do not prevent the People from asking a jury to draw that inference . . . or to find personal infliction of serious bodily injury on some other basis that may be supported by the record of conviction." (*Eslava*, at pp. 520-521.) *Eslava* is correct in this regard.

Two other recent decisions also remanded for a jury trial in similar circumstances. (*People v. McCaw* (2016) 1 Cal.App.5th 471, 486-487, review granted October 19, 2016, S236618; *People v. Marin* (2015) 240 Cal.App.4th 1344, 1366-1367.) *McCaw* and *Marin* are also correct in this regard.

As the majority notes, two recent cases did not remand for a jury trial or, indeed, for any trial. (Maj. opn., *ante*, at p. 24, fn. 6.) Those cases simply reverse or strike the conviction at issue. (*People v. Navarette* (2016) 4 Cal.App.5th 829; *People v. Saez* (2015) 237 Cal.App.4th 1177.) But *Navarette* found the evidence *insufficient* under state law to support the finding regarding the conviction. (*Navarette*, at pp. 835, 840, 849, 855.) A finding of legal insufficiency precludes any retrial. (*People v. Hatch* (2000) 22 Cal.4th 260, 272.) *Navarette* did not hold that a jury trial is never appropriate. *Saez* simply reversed the finding on the conviction. (*Saez*, at p. 1209.) But it did not explain why it did so rather than remand for a jury trial.

5

The majority remands for a court trial apparently due to the way this particular case has been litigated.  If so, that presumably would permit a jury trial in another case that was litigated differently.  In that event, although *this* defendant will win by avoiding jury factfinding, presumably, in other cases, the defendants should receive the jury trial due them, complete with factfinding based on the record of conviction.

The majority also seems to base its refusal to order a jury trial on the belief that "it would not be much of a trial." (Maj. opn., *ante*, at p. 23.)  That is not a reason to overturn decades of settled jurisprudence.  I agree that a jury would probably read the transcript of the preliminary hearing and, as the trial court already did, reach the obvious conclusion that the underlying conviction was for assault with a deadly weapon.  (See maj. opn., *ante*, at p. 5.)  The jurors might wonder why they were called on to do so, just as they might in any trial limited to the fact of a prior conviction.  (Such a limited jury trial sometimes occurs, as a defendant has always had a jury trial right on the existence of the conviction. (Maj. opn., *ante*, at p. 6.))  Defendants are entitled to such a limited jury trial if they want one.  The limited nature of the trial provides no reason to preclude it.

Additionally, defendant did have "an opportunity and incentive to cross-examine" witnesses at the preliminary hearing (*Reed*, *supra*, 13 Cal.4th at p. 229), which was why we permitted the factfinder to consider the transcript of that hearing, while *prohibiting* consideration of a probation report.  (*Reed*, at p. 230; cf. maj. opn., *ante*, at pp. 22-23.)  Regarding other procedural safeguards, in *Reed*, we "express[ed] no opinion as to whether a defendant would be entitled to call live witnesses to dispute circumstances of the prior offense"; we held only that "the *prosecution* is not permitted to present live testimony outside the record of conviction . . . ."  (*Reed*, at p. 229.)  It may be that *defendants* have the right to present live testimony at a jury trial to *dispute* the nature of the conviction, should

6

they wish to do so.  Only the prosecution might be limited to the record of conviction.

Except regarding the jury trial right, the majority cites no high court authority inconsistent with our jurisprudence in this area, including *Reed*, *supra*, 13 Cal.4th 217.  As in *Hayes*, *supra*, 555 U.S. 415, a jury should be allowed to determine the nature of the underlying conviction but, under California law, the prosecution would be limited to the record of conviction.

I dissent from the majority's remanding the case for a limited court trial, rather than a jury trial.

CHIN, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Gallardo

_____

**Unpublished Opinion** XXX NP opn. filed 11/16/15 – 2nd Dist., Div. 6
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S231260
**Date Filed:** December 21, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Thomas I. McKnew, Jr.

_____

**Counsel:**

Christian C. Buckley, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Shawn McGahey Webb, Louis W. Karlin and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Christian C. Buckley
Buckley & Buckley
9921 Carmel Mountain Road, #355
San Diego, CA  92129
(858) 538-6054

Noah P. Hill
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 269-6000