Filed 1/26/21  P. v. Medina CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DANIEL MEDINA,<br><br>Defendant and Appellant. | 2d Crim. No. B300830<br>(Super. Ct. No. 18CR01185)<br>(Santa Barbara County) |

Daniel Medina appeals the judgment entered after a jury convicted him of assault with a deadly weapon (Pen. Code,[1] (§ 245, subd. (a)(1); count 2) and found true the allegation that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(B)).  Appellant admitted suffering a prior strike and serious felony conviction (§§ 667, subd. (a)(1), 1170.12, subd. (b)(1), 1192.7, subd. (c)(28)).  The trial court sentenced him

---

[1] All statutory references are to the Penal Code unless otherwise stated.

to 18 years in state prison, consisting of the high term of four years, doubled for the strike prior, plus five years each for the gang and prior serious felony enhancement allegations.[2] Appellant contends the evidence is insufficient to support the true finding on the gang enhancement allegation. He also claims the enhancement was improperly imposed under subdivision (b)(1)(B) of section 186.22. We affirm.

## STATEMENT OF FACTS

On the night of February 3, 2018, Carlos Flores-Escamilla and his niece Jasmine Flores went to a bar in Santa Barbara. Carlos[3] saw Mario Hernandez, a local rapper known as "Sad Boy" who is a member of the Eastside criminal street gang. Carlos approached Hernandez, who was sitting among a group of people,

---

[2] Appellant and codefendant Juan Rios were charged with the attempted premeditated murder of Carlos Flores-Escamilla (§§ 187, subd. (a), 664; count 1), assault with a deadly weapon upon Callisto Caldwell (count 2), assault with a deadly weapon upon Thomas Martinez (count 3), and participation in a criminal street gang (§ 186.22, subd. (a); count 4). Prior strike and serious felony conviction allegations were alleged as to all four counts. It was further alleged as to counts 1 through 3 that the crimes were committed for the benefit of a gang, and that appellant and Rios both personally inflicted great bodily injury upon the victims of those crimes (§ 12022.7, subd. (a)). Count 1 also included a personal weapon use allegation (§ 12022, subd. (b)(1)). The jury convicted appellant on count 2 and found the attendant gang and prior conviction allegations true, but found the great bodily injury allegation not true. The jury acquitted appellant on counts 1 and 3 and was unable to reach a verdict on count 4.

[3] For ease of reference, we refer to Carlos Flores-Escamilla and Jasmine Flores by their first names.

and told him he liked his music.  Carlos took offense when Hernandez looked at Jasmine in a "sexual way" and told him "that's my niece."  After Hernandez and Carlos engaged in a "stare down," Carlos left the bar with Jasmine.

After Carlos and Jasmine left the bar they noticed that they were being followed by two men, later identified as appellant and codefendant Juan Rios.  Appellant and Rios approached Carlos and Jasmine while Rios flashed Eastside gang signs.  Appellant punched Jasmine in the face, causing her to fall to the ground, then joined Rios in assaulting Carlos.  Appellant repeatedly yelled "Traviesos" before and after he hit Jasmine.

Calisto Caldwell, Thomas Martinez, and Trina Garcia witnessed the attack as they were returning to their car after a concert.  Caldwell grabbed appellant and pulled him away from Carlos, while Martinez punched Rios.

After appellant and Rios ran away, Caldwell noticed that he had a three-and-a-half inch gash on his thigh and a puncture wound on his stomach.  Caldwell subsequently received staples and stitches for his wounds.  Martinez suffered knife wounds to his right hand that also required stitches.  Carlos suffered a large gash wound to his chest and wounds to his leg and arm, all of which required staples or stitches.  He also had to undergo surgery for a wound to his left hand.

Jonathan Reddinger witnessed the assault from a distance.  After appellant and Rios ran away, Reddinger observed one of them throw what appeared to be a knife or box cutter into the gutter near the intersection of State Street and Cota Street.  The police subsequently recovered a box cutter from that location.  The box cutter was open and had blood on the blade that matched Carlos's DNA profile.

Detective Michael Claytor testified as the prosecution's gang expert. Appellant and Rios are members of the Traviesos clique of the Eastside criminal street gang. Both men have Eastside gang tattoos and were in possession of Traviesos paraphernalia when they were arrested. The gang's primary activities include assault with a deadly weapon and attempted murder. Respect for the gang is of paramount importance, and its members often respond with violence to any acts or behavior perceived as disrespectful. It is also common for gang members to shout their gang's name or flash gang signs while committing a crime. "Claiming" the gang in this manner provides more stature for the gang.

In response to a hypothetical tracking the facts of the case, Detective Claytor opined that all of the charged offenses were committed for the benefit of the Eastside gang. Appellant and Rios are both members of the gang and acted in association with each other in committing the crimes. Appellant flashed the gang's hand signs and repeatedly shouted "Traviesos" before and during the attack. Doing so enhanced the fear and intimidation that any eyewitnesses to the attack would experience. Moreover, the gang benefitted from the attack because witnesses would be less willing to cooperate with law enforcement, which enhanced the gang's ability to commit additional crimes in the future.

Martin Flores testified as a gang expert on behalf of the defense. According to Flores, gang members do not need to respond to disrespect from others because they experience disrespect on an "ongoing basis" as "part of their reality." Although some gang members may respond to perceived disrespect, it is not due to any rules imposed by the gang. In response to a hypothetical based on the facts of the case, Flores

opined that the charged offenses were not committed for the benefit of the Eastside gang. The crimes were not gang-related because they did not involve rival gang members and Rios apparently fled the scene after being repeatedly punched by Martinez. Flores also opined that Rios was no longer an active member of the gang when the crimes were committed.

## DISCUSSION

### *Sufficiency of the Evidence*

Appellant contends the evidence is insufficient to support the jury's true finding on the gang enhancement. We disagree.

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have found the [enhancement true] beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212; accord, *People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*) [reviewing gang enhancement for sufficient evidence].) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) It is well settled that "'[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to

5

support'" the jury's verdict.'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

Section 186.22, subdivision (b)(1) punishes gang-related crimes that are committed with the specific intent to aid crimes by gang members. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138.) Among other things, a prosecutor must prove beyond a reasonable doubt (1) that the underlying crime was "gang-related" because the defendant committed it "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1); *Albillar*, *supra*, 51 Cal.4th at p. 59.) The specific intent prong may be satisfied with proof "that the defendant intended to and did commit the charged felony with known members of a gang," because from such proof "the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, *supra*, at p. 68; see also *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 ["[c]ommission of a crime in concert with known gang members . . . supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime"].

Expert opinion testimony can be sufficient to support a gang enhancement. (*Albillar*, *supra*, 51 Cal.4th at p. 63.) Because "[n]ot every crime committed by gang members is related to a gang" (*id.* at p. 60), an expert's opinion that a crime was committed to benefit a gang must rest upon more than the assumed occurrence of the charged offense, evidence that a defendant is a gang member, and generalizations about gang

6

culture or habits (*People v. Perez* (2017) 18 Cal.App.5th 598, 612-613; *People v. Rios* (2013) 222 Cal.App.4th 542, 573-574 (*Rios*); *People v. Ochoa* (2009) 179 Cal.App.4th 650, 657 (*Ochoa*)). The specific circumstances of the offense must support the expert's inferences that the conduct was committed to benefit the gang. For example, an expert opinion is sufficient to support a gang enhancement where there is evidence the defendant committed a charged crime with known gang members while displaying gang paraphernalia and tattoos. (*Albillar*, at pp. 62, 68.) Conversely, an expert's opinion that a charged crime by a gang member acting alone was for the benefit of the gang because the defendant is a gang member and any violent crime enhances the gang's reputation is insufficient to support a gang enhancement. (See, e.g., *Perez*, at pp. 612-613 [expert testimony insufficient to support gang enhancement where defendant acted alone and there was no evidence that gang signs were used or gang affiliations declared, that the offense occurred in gang territory, or that the victims were rival gang members or saw gang tattoos or clothing]; *Rios*, at p. 574 [same]; *Ochoa*, at pp. 662–663 [same].)

In challenging the gang enhancement, appellant does not dispute that the evidence is sufficient to establish that both he and Rios were members of the Eastside gang. He also effectively concedes that the evidence is sufficient to support Detective Claytor's opinion that appellant and Rios acted in association in attacking Carlos and Jasmine, and "that the gang signs appellant threw before the fight with the Flores' was perhaps sufficient to buttress Claytor's opinion that had appellant been convicted on count one, a true finding on a gang enhancement would be based on sufficient evidence." He nevertheless claims that as to the

assault upon Caldwell (count 2), "appellant and Rios were not acting to assist each other, nor was the crime alleged in that count in any way anticipated when they confronted the Flores'. Rather, the crime in count two occurred when Mr. Caldwell crossed the street with the intent of breaking up the fight between appellant and Rios and the Flores'." He claims the evidence is thus insufficient to support Detective Claytor's opinion that appellant and Rios acted in association in committing the assault on Caldwell with the specific intent to assist each other's criminal conduct.

We are not persuaded. Appellant and Rios were both convicted of assaulting Caldwell with a deadly weapon. They committed the assault when Caldwell intervened in their attack on Carlos and Jasmine. Just prior to that attack, both appellant and Rios flashed their gang's hand signs; before and during the attack, appellant repeatedly yelled "Traviesos." This evidence supports an inference appellant and Rios assaulted Caldwell with the intent to prevent him from interfering with their gang-related attack on Carlos and Jasmine. Appellant and Rios "not only actively assisted each other in committing [the assault on Caldwell], but their common gang membership ensured that they could rely on each other's cooperation in committing the[] crime[] and they would benefit from committing [it] together." (*Albillar*, *supra*, 51 Cal.4th at pp. 61-62.) Appellant's claim that the evidence is insufficient to support the gang enhancement thus fails.

### Sentencing on Gang Enhancement

Appellant contends the court erroneously sentenced him under subdivision (b)(1)(B) of section 186.22, which provides for a five-year gang enhancement when the substantive offense

8

constitutes a serious felony as defined in section 1192.7, subdivision (c).  He claims the matter must be remanded for him to be resentenced under subdivision (b)(1)(A) of section 186.22—which provides for an enhancement of two, three or four years—because the crime of assault with a deadly weapon is not defined as a serious felony in subdivision (c) of section 1192.7.  Appellant is mistaken.  Assault with a deadly weapon is clearly defined as a serious felony in section 1192.7, subdivision (c)(31).  (See *People v. Gallardo* (2017) 4 Cal.5th 120, 125 [recognizing that "[t]he term 'serious felony' is defined to include 'assault with a deadly weapon'"].)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

9

Thomas R. Adams, Jr., Judge
Superior Court County of Santa Barbara

_____

Leonard L. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller, Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.