Filed 11/12/21  P. v. Corrales CA2/6
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY LUIS CORRALES,<br><br>    Defendant and Appellant. | 2d Crim. No. B303207<br>(Super. Ct. No. VA134775)<br>(Los Angeles County)<br><br>OPINION FOLLOWING TRANSFER FROM SUPREME COURT |

Johnny Luis Corrales appeals from the trial court's denial of his petition for resentencing.  (Pen. Code,[1] § 1170.95.)  He contends the court erred when it summarily denied the petition because doing so ignored section 1170.95's requirements and violated his constitutional right to counsel.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In April 2014, brothers J.M. and P.M. were driving in Pico Rivera when Corrales and two other gang members stepped

---

[1] Statutory references are to the Penal Code.

in front of their car.[2] Corrales asked the brothers where they were from. They replied that they did not "bang." Corrales then asked if the brothers lived on a certain street in his gang's territory. When they replied that they did, Corrales said, "Bust them." As J.M. drove away, one of the gang members took a pistol from his waistband and shot at the fleeing vehicle.

The next day, P.M. left his house with another brother, F.M., and a friend, J.L., in the same vehicle J.M. had been driving the day before. After they drove by a convenience store where gang members congregated, they heard a car approach. P.M. yelled for F.M. and J.L. to get down. Three gunshots rang out, one of which struck P.M.

P.M. lost consciousness as he drove away, and his car eventually crashed. F.M. got out of the car and ran to a nearby hospital. When he returned, police had arrived at the scene of the crash. P.M. was dead.

The following month, Corrales admitted to a police informant that he was a gang member and had been involved in both of the shootings. He claimed that the victims were members of a local "tagging" crew that had ignored warnings from his gang. He was not concerned about the gun that had been used to murder P.M. because his fellow gang members had disposed of it.

Corrales also told the informant that even if police recovered the gun he was not concerned about his fingerprints or DNA being found on it because he did not shoot P.M. He said

---

[2] Because Corrales pled guilty, we take the underlying facts of the case from the transcript of the preliminary hearing. Corrales stipulated that the transcript plus police reports and discovery could be used as the factual basis for his plea. (See *People v. West* (1970) 3 Cal.3d 595, 600.)

that police showed him a photograph of the car used in the shooting of P.M. and that the car belonged to his girlfriend. He worried that police would be able to identify him as the driver if they enhanced the photo.

Corrales later reiterated to the informant that he was concerned that police might be able to identify him as the driver of the car used in P.M.'s murder. He also told the informant where the murder had occurred. He identified the type of gun used to kill P.M., and said that P.M. had been shot in the torso from close range.

One of Corrales's fellow gang members also spoke to a police informant. He told the informant that he was not concerned that police had found the car used in P.M.'s murder because the car belonged to Corrales's girlfriend, thus any DNA or fingerprints found inside was readily explainable. He was similarly unconcerned about police finding the gun used to shoot P.M. because he had wiped it down after the murder. He also claimed that police could not identify him as the shooter.

The information charged Corrales with the murder of P.M. (§ 187, subd (a)); the attempted murders of F.M., J.L., J.M., and P.M. (§§ 664/187, subd. (a)); and two counts of shooting at an occupied vehicle (§ 246). It also alleged that Corrales committed his crimes for the benefit of a criminal street gang (§ 186.22, subds. (b)(1)(C) & (b)(4)) and that a principal personally used a firearm (§ 12022.53, subd. (b)), personally discharged a firearm (*id.*, subd. (c)), and personally discharged a firearm causing great bodily injury or death (*id.*, subd. (d)).

Corrales pled guilty to the first degree murder of P.M. and the attempted premeditated murder of F.M. in 2018. He also admitted that he committed his crimes for the benefit of a

3

criminal street gang.  The trial court sentenced him to 25 years to life in state prison on the murder plus five years on the attempted murder.  It stayed the 10-year sentence enhancement on the gang allegation admission.

In September 2019, Corrales petitioned for resentencing pursuant to section 1170.95.  In his petition, Corrales declared that:  (1) the information filed against him allowed the prosecution to proceed on a felony murder theory or natural and probable consequences theory, (2) he pled guilty to first degree murder, (3) he could not now be convicted of first degree murder based on amendments to sections 188 and 189, and (4) he was not the actual killer, did not act with the intent to kill, and was not a major participant in the underlying felony who acted with reckless indifference to human life.  Corrales also requested the appointment of counsel.

The trial court summarily denied Corrales's petition without appointing counsel.  According to the preliminary hearing transcript, one of Corrales's fellow gang members shot and killed P.M. from the car Corrales was driving.  The evidence was thus "clear" that Corrales was convicted as a direct aider and abettor.  He could therefore still be convicted of murder under the changes to the law that occurred after his conviction, and was thus ineligible for resentencing as a matter of law.

On appeal, Corrales contended the trial court erred when it summarily denied his resentencing petition because doing so ignored section 1170.95's requirements and violated his constitutional right to counsel.  (*People v. Corrales* (Jan. 19, 2021, B303207) 2021 WL 163895 at p. *1 [nonpub. opn.].)  We disagreed, concluding that summary denial was proper because Corrales was statutorily ineligible for section 1170.95 relief.  (*Id.*

4

at pp. *2-3.) We further concluded that the denial did not violate Corrales's constitutional rights. (*Id.* at p. *4.) The Supreme Court subsequently granted Corrales's petition for review, and ordered us to vacate our decision and reconsider the matter in light of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).

DISCUSSION

Corrales contends the trial court erred when it summarily denied his section 1170.95 resentencing petition without appointing counsel. Having reconsidered the matter, we agree. (*Lewis, supra,* 11 Cal.5th at pp. 961-970.) But the error was harmless.

"A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition" for resentencing if: (1) the "complaint, information, or indictment . . . filed against [them] . . . allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) the person "was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which [they] could be convicted for first degree or second degree murder," and (3) the person "could not [now] be convicted of first or second degree murder because of changes to [s]ection 188 or 189." (§ 1170.95, subd. (a).) If a trial court erroneously denies a section 1170.95 resentencing petition without appointing counsel, the error requires reversal if the petitioner shows a reasonable probability that the ""petition would not have been summarily denied without an evidentiary hearing"" had the court appointed counsel. (*Lewis, supra,* 11 Cal.5th at p. 974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.) Here, no such reasonable probability exists because Corrales has not shown that he was convicted of

5

either felony murder or murder under a natural and probable consequences theory.

*Felony murder*

The preliminary hearing transcript shows that Corrales admitted to a police informant that he drove the car from which his fellow gang member shot and killed P.M. But shooting at an occupied vehicle cannot be the basis for felony murder. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.) And Corrales identifies no other crime that could have provided the basis for a felony murder conviction. Nor does the preliminary hearing transcript reveal any such crime.

Corrales counters that, under the principles set forth in *People v. Gallardo* (2017) 4 Cal.5th 120, the trial court was not permitted to rely on the preliminary hearing transcript to find him ineligible for section 1170.95 relief. *Gallardo* is inapposite. As our colleagues in Division 7 have explained, "[t]he Supreme Court in *Gallardo* held [that] a trial court may not rely on the preliminary hearing transcript to determine the nature of [a] defendant's prior conviction for purposes of sentencing where the record of conviction [does] not show whether the . . . conviction under former section 245, subdivision (a)(1), was of assault with a deadly weapon or assault with force likely to produce great bodily injury." (*People v. Perez* (2020) 54 Cal.App.5th 896, 907, review granted Dec. 9, 2020, S265254 (*Perez*).) "The [*Gallardo*] defendant had [pled] guilty to the prior assault, but she did not admit whether she had used a deadly weapon." (*Ibid.*) The Supreme Court thus concluded that "the trial court had engaged in improper judicial factfinding in violation of the Sixth Amendment . . . '[b]ecause the relevant facts were neither found

6

by a jury nor admitted by defendant when entering her guilty plea.'" (*Id.* at pp. 907-908.)

"In contrast to the sentencing at issue in *Gallardo*, 'the retroactive relief petitioners are afforded by [section 1170.95] is not subject to Sixth Amendment analysis.'" (*Perez, supra*, 54 Cal.App.5th at p. 908, alterations omitted.) "Rather, the Legislature's changes constituted an act of lenity that does not implicate . . . petitioners' Sixth Amendment rights.' [Citations.]" (*Ibid.*, alterations omitted.) Accordingly, "*Gallardo* did not prohibit the [trial] court from considering the preliminary hearing transcript as part of [Corrales's] record of conviction in evaluating whether [he] had made a prima facie showing he was entitled to relief under section 1170.95." (*Ibid.*)

We also reject Corrales's claim that the trial court's reliance on the preliminary hearing transcript to determine whether he was eligible for resentencing violated the rule against hearsay. While we agree that the transcript contained hearsay (*People v. Reed* (1996) 13 Cal.4th 217, 224), and that Corrales's stipulation to it as part of the factual basis for his plea did not constitute an adoptive admission that waived any hearsay issue on appeal (see *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1104), reliable hearsay is admissible in posttrial proceedings (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095). Preliminary hearing transcripts are reliable hearsay. (*Reed*, at p. 223-224.)

Finally, we reject Corrales's argument that even if the trial court was permitted to rely on the preliminary hearing transcript, it does not show that he acted with either the intent to kill or reckless indifference to human life. (See *People v. Eynon* (2021) 68 Cal.App.5th 967, 976-979.) *Eynon* is inapposite. In that case, the defendant admitted that he committed first degree

felony murder; the issue was whether he did so with the requisite intent and could thus still be convicted of murder under current law. (*Id.* at pp. 976-978; see § 1170.95, subd. (a)(3).) Here, the issue is not whether Corrales acted with the intent to kill or reckless indifference to human life, but whether he was convicted of felony murder. The preliminary hearing transcript reveals that he was not.

*Murder under a natural and probable consequences theory*

In 2014, the Supreme Court held that a defendant cannot be convicted of first degree murder under the natural and probable consequences doctrine. (See *People v. Chiu* (2014) 59 Cal.4th 155, 166 (*Chiu*).) Corrales was convicted of first degree murder four years later. His conviction thus could not have been based on a natural and probable consequences theory.

*People v. Offley* (2020) 48 Cal.App.5th 588 and *People v. Rivera* (2021) 62 Cal.App.5th 217, review granted June 9, 2021, S268405, on which Corrales relies, are not to the contrary. In each of those cases, the defendant was convicted of second degree murder. (*Offley*, at p. 593; *Rivera*, at p. 225.) And at the time each of those convictions occurred, a person could be convicted of second degree murder under the natural and probable consequences doctrine. (*Offley*, at p. 595, fn. 3; *Rivera*, at p. 232; see *Chiu, supra*, 59 Cal.4th at p. 166.) Because both Offley's and Rivera's murder convictions could have been based on that doctrine, summary denial of their resentencing petitions was improper. (*Offley*, at p. 599; *Rivera*, at p. 239.)

Unlike the *Offley* and *Rivera* defendants, Corrales was convicted of first degree murder. And as set forth above, at the time of his plea a person could not be convicted of first degree murder under the natural and probable consequences doctrine.

Corrales's murder conviction thus could not have been based on that doctrine.

That the information filed in Corrales's case would have allowed prosecutors to proceed on a natural and probable consequences theory of murder—as was the case in *Offley* and *Rivera*—is not conclusive here. That showing is only one of section 1170.95's requirements for relief. (See § 1170.95, subd. (a)(1).) Another is that the petitioner was "*convicted of* felony murder or murder under a natural and probable consequences theory." (*Id.*, subd. (a), italics added.) Corrales was convicted of neither. He has thus failed to show a reasonable probability that his resentencing petition would not have been summarily denied had the trial court appointed counsel. The error was harmless. (*People v. Simmons* (2021) 65 Cal.App.5th 739, 749-750, review granted Sept. 1, 2021, S270048.)

*Right to counsel*

Finally, Corrales contends the summary denial of his resentencing petition violated his right to counsel and due process and requires reversal. The Supreme Court has disagreed with these contentions (see *Lewis*, *supra*, 11 Cal.5th at pp. 972-973), as do we. The "trial court's failure to appoint counsel to represent [Corrales during the resentencing process] was state law error only." (*Id.* at p. 973.)

9

## DISPOSITION

The trial court's order denying Corrales's petition for resentencing pursuant to section 1170.95, entered November 5, 2019, is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

10

Raul A. Sahagun, Judge

Superior Court County of Los Angeles

_____

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristin J. Inberg and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.