Filed 3/26/24  P. v. Bates CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEVERON LAMARR BATES,<br><br>    Defendant and Appellant. | B322346<br><br>(Los Angeles County<br>Super. Ct. No. BA332778) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

James S. Donnelly-Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Irvi, Supervising Deputy Attorney General, and Gabriel Bradley, Deputy Attorney General, for Plaintiff and Respondent.

The trial court denied defendant and appellant Deveron Bates's (defendant's) petition for resentencing under Penal Code section 1172.6 (former section 1170.95) at the prima facie stage based on its conclusion that the record of conviction demonstrates defendant was the victim's actual killer.[1] On appeal, we are asked to decide whether trial court improperly made factual findings to deny defendant's resentencing petition without issuing an order to show cause.

## I. BACKGROUND

### A. *The Murder*

On March 4, 2006, at approximately 1:15 a.m., Jennifer Parsons (Parsons) was driving to her mother's house with defendant, who was then her boyfriend. She and defendant had used crack cocaine earlier that night.

The car Parsons was driving was nearly out of gas, but she did not have any money to refill the tank. She pulled into a gas station she was familiar with and told defendant she was going to ask the attendant, who she knew, if he would give her a small amount of gas so she could reach her mother's house. After the attendant refused to give Parsons the gas, she went back to the car and told defendant they needed to see if they could find someone to ask for change.

Parsons was successful in obtaining funds to pay for some gas, but when she returned to her car, defendant was gone. As she was pumping the gas, Parsons saw defendant running across nearby streets and saw a minivan driving along a similar route,

---

[1]     Undesignated statutory references that follow are to the Penal Code.

stopping and starting as if the driver were looking for someone. Defendant ultimately returned to the gas station and jumped into the back seat of the car Parsons was driving. Defendant was breathing hard and looked exhausted, and he did not answer when Parsons asked him what was wrong. As they drove away, Parsons heard sirens and saw an ambulance.

The same night, around the same time, two bystanders separately observed a taller man (later identified as defendant) attack a shorter man, Faustino Narvaes (Narvaes), and attempt to take a bag away from him. One of the bystanders, Felix Hernandez (Hernandez), saw defendant stab Narvaes multiple times with what appeared to be a kitchen knife.[2] Hernandez attempted to dissuade defendant from continuing to harm Narvaes and then pursued defendant in his van after defendant took Narvaes's bag and fled.

Narvaes died, and an autopsy found he had been stabbed with a knife in two places.

### B. Trial

Defendant was charged with Narvaes's murder. At trial, the only theory of murder upon which the jury was instructed was felony murder. During closing argument, the prosecution relied on Hernandez's testimony (identifying defendant as the man who stabbed Narvaes) to argue defendant was guilty of Narvaes's murder. Defendant argued the eyewitness testimony

---

[2] Hernandez initially identified another man as the person who stabbed Narvaes before he identified defendant as the culprit.

was unreliable and contended the jury did not have corroborating evidence necessary to convict defendant.

The jury convicted defendant of one count of first degree felony murder and one count of attempted second degree robbery. As to the murder count, the jury found true the allegation that the murder was committed while defendant was engaged in the commission of an attempted robbery. As to both counts, the jury found true a special allegation that defendant personally used a deadly and dangerous weapon, a knife, when committing the offenses.

Defendant was sentenced to life without the possibility of parole plus one year. A prior panel of this court affirmed his conviction. (*People v. Bates* (Feb. 7, 2011, B223341) [nonpub. opn.]).

### C.    *Petition for Resentencing*

In the fall of 2021, defendant filed a section 1172.6 petition for resentencing. Defendant asserted an information or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder and he could not now be convicted of first degree murder because of changes made to sections 188 and 189. The trial court appointed counsel for defendant.

The People opposed defendant's section 1172.6 petition and argued he was ineligible for relief because the record of conviction established he was Narvaes's actual killer, had the intent to kill, and was a major participant who acted with reckless indifference to human life. Submitted with the People's opposition were this court's prior opinion affirming defendant's conviction, the amended information filed against him, the reporter's transcript

4

of the criminal trial, and a probation officer's pre-sentencing report.  The People's opposition did not include, however, a transcript of defendant's police interview that had been played during his trial.

The trial court held a hearing and denied the petition because defendant had not made a prima facie case for relief. The court found defendant was Narvaes's actual killer based on the jury's true finding that defendant used a knife, the absence of another suspect, and defendant's admission—made during the police interview for which no transcript or recording had been submitted with the People's opposition—that defendant had a knife and at least swung it toward the victim.

## II.  DISCUSSION

Even without consideration of defendant's police interview admission, which defendant argues was improper, the other record of conviction materials establish the jury must have concluded defendant was Narvaes's actual killer.  Defendant's jury was not instructed on accomplice liability, it is undisputed Narvaes died of a stab wound, the jury found defendant personally used a knife in the commission of the murder, and there was no argument at trial suggesting anyone else participated in the stabbing or the attempted robbery.  As the actual killer, defendant is not entitled to section 1172.6 relief. And defendant's associated ineffective assistance of trial counsel claim is meritless because he had no constitutional right to counsel at the hearing from which he appeals.

5

### A. *Legal Background*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 [(SB 1437)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) To this end, the law specifically provided that a "person's culpability for murder must be premised upon that person's own actions and subjective mens rea," and a conviction for murder "requires that a person act with malice aforethought." (Stats. 2018, ch. 1015, § 1, subd. (g).)

At the prima facie stage of section 1172.6 review, a trial court must determine whether the petitioner would be entitled to relief if his or her allegations were proven. If so, the court must issue an order to show cause. (*Lewis*, *supra*, 11 Cal.5th at 971.) At the prima facie stage, the court should not make credibility determinations or engage in "factfinding involving the weighing of evidence or the exercise of discretion." (*Id*. at 974.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id*. at 971; see also *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935 [record of conviction includes the charging document, verdict forms, transcript of closing arguments, and jury instructions].) We review de novo the trial court's determination that a petitioner failed to make a section 1172.6

6

prima facie showing.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

### B.    *The Trial Court Properly Denied the Petition*

The jury found defendant guilty of first degree felony murder.  "[D]efendants convicted of felony murder are not eligible for relief [under section 1172.6] if they were the actual killer." (*People v. Harden* (2022) 81 Cal.App.5th 45, 53.)  "The key question in determining whether the trial court properly denied [the defendant's] petition" as the actual killer "is whether it was *possible* for a juror to have" "found [him] guilty of felony murder . . . without also finding [he] personally killed the victim[.]" (*Harden, supra*, 81 Cal.App.5th at 54.)

The record of conviction here rules out this possibility.  The only theory of murder on which the trial court instructed defendant's jury was felony murder, which the instructions defined as the "unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of attempted robbery." (CALJIC No. 8.21.)  The court did not instruct the jury on accomplice liability by virtue of aiding and abetting.  And the jury found true the allegation that defendant personally used a knife in the commission of the offense.[3]  In addition, defendant

---

[3]    Defendant contends the jury's true finding that he used a knife during the commission of the crime does not establish he was the actual killer.  While that finding may not alone establish defendant actually killed Narvaes, it nevertheless indicates the jury found defendant used a knife in the commission of the crime.  And, in the context of the entire record of conviction, the finding supports the conclusion that the jury could not have convicted defendant as anything other than the actual killer.

was the sole defendant at trial and he was prosecuted as the sole perpetrator. There was no argument suggesting defendant had an accomplice, much less one who could have stabbed Narvaes.[4] Nor was there any argument Narvaes's death was caused by anything other than the stab wounds he suffered. The record of conviction accordingly demonstrates no possibility the jury could have convicted defendant of murder on a theory other than as Narvaes's actual killer. (See, e.g., *People v. Mares* (2024) 99 Cal.App.5th 1158, 1173 ["No record evidence shows [the defendant] was an accomplice, and uncontradicted record evidence shows he was the killer"].)

In arguing the contrary, defendant appears to believe the record of conviction cannot refute a section 1172.6 petitioner's allegations at the prima facie stage unless the jury made a specific factual finding that the defendant was the actual killer. None of the cases on which defendant relies stands for such a

---

*People v. Offley* (2020) 48 Cal.App.5th 588, upon which defendant relies, does not hold otherwise. That case merely concluded a jury's finding that the defendant personally discharged a firearm causing great bodily injury or death was not, in the context of the record of conviction, sufficient to demonstrate the defendant acted with malice aforethought. (*Id.* at 589.)

[4]     In his reply brief, defendant asserts that the People acknowledged he argued at trial that someone else was the robber or actual killer. Defendant misreads the People's argument, which in fact asserts defendant made no such argument at trial. Moreover, defendant provides no citations to the record establishing he made that argument at trial. To the extent he contends he argued mistaken identity below, the jury clearly rejected that theory by convicting him.

broad proposition.[5] Nor does that argument square with authority holding courts may rely on the entire record of conviction, not just the jury's verdict.

Relying on *Descamps v. U.S.* (2013) 570 U.S. 254 and *People v. Gallardo* (2017) 4 Cal.5th 120, defendant also argues that because a sentencing court considering a defendant's prior conviction is limited to identifying facts the jury was necessarily required to find to render a guilty verdict in the prior case, the same rule should apply here. This argument is unpersuasive. The limitation in the sentencing context derives from the Sixth Amendment, and is intended to ensure a jury, not a court, finds true the facts that could lead to an increase in a defendant's maximum sentence. (*Gallardo, supra,* at 134.) The section 1172.6 resentencing process, in contrast, is a legislative "act of lenity" that does not (and cannot) result in increased punishment. (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 111.)

### C. *Defendant's Ineffective Assistance Claim Fails*

Defendant argues his counsel below rendered constitutionally ineffective assistance by failing to object to the

---

[5] In the cases defendant cites, the record of conviction left open the possibility that the defendant had not actually killed the victim—either because there was evidence other individuals were at least present during, if not actively involved in the commission of, the crime (see, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 1; *People v. Garcia* (2020) 46 Cal.App.5th 123, 155) or because there was another potential cause of the victim's death altogether (*People v. Vang* (2022) 82 Cal.App.5th 64, 80-81). Neither of these scenarios is possible in this case.

trial court and the prosecutor's reliance on the statement of facts in the prior appellate opinion. There is no general constitutional right to the effective assistance of counsel in a section 1172.6 proceeding at the prima facie stage, however. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 226, 228.) Even if there were, defendant cannot show prejudice in light of our holding that his section 1172.6 petition was appropriately resolved at the prima facie stage.

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

LEE, J.*

---

* Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.