Filed 1/15/25  P. v. Valle CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099519 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20120006426, SF115647C) |
| v. | |
| JOSE ANTONIO VALLE, | |
| Defendant and Appellant. | |

Defendant Jose Antonio Valle appeals from the trial court's denial, after an evidentiary hearing, of his petition for resentencing under Penal Code[1] section 1172.6.[2]

---

[1]     Undesignated section references are to the Penal Code.

[2]     Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Defendant filed his petition under former section 1170.95, but we will refer to the current section 1172.6 throughout this opinion.

1

Defendant argues the trial court erred by resolving conflicts in the evidence, which included a transcript of defendant's preliminary examination, as well as by applying the wrong evidentiary standard when denying the petition. Defendant further argues insufficient evidence supports the trial court's finding he is guilty of murder under current law. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant committed a home invasion robbery in November 2010 with two accomplices. During the robbery, Angel H. was killed by a gunshot to the head. After a preliminary examination, defendant pled guilty to voluntary manslaughter with an attached personal use of a firearm enhancement, along with other offenses.

During the preliminary examination, four witnesses who were present in the home at the time of the robbery testified: Andrea B., James W., Chris P., and Reginald B. During their testimony, all four witnesses identified defendant as one of the perpetrators of the home invasion robbery along with two accomplices—one described as having long hair and the other as having short hair. All four witnesses also testified defendant and his two accomplices were armed with guns.

Defendant was identified as the assailant who entered Andrea and Reginald's bedroom while they were sleeping, drew his weapon, and directed them to lie on the ground with the others. He was also identified as the assailant who answered the front door to the home to let in James and Chris and then directed them to lie on the ground at gunpoint. Once all the victims except for Angel were forced to the ground by defendant, the long-haired assailant ransacked the apartment and the short-haired assailant continued to point a gun at the victims on the ground. During this time, defendant argued with Angel, who was standing near the other victims. Andrea and James testified that defendant issued commands to the other assailants throughout the robbery.

The long-haired assailant eventually put a potato over the barrel of his gun, pointed it at multiple witnesses' heads and asked Angel if he wanted the others to be shot.

2

At some point after, defendant forced Angel into a different room from everyone else and ordered one of the other assailants to take Chris into the back of the house. Andrea testified that she heard defendant threaten to kill Chris if Angel did not comply. At some point, Angel gave the assailants the combination to a safe in one of the bedrooms.

Andrea testified that, before the shooting, she heard defendant order an accomplice to go outside the house and start the car. She and Chris heard one of the assailants leave the home and start the car.

Andrea testified the long-haired assailant was the shooter. The other witnesses testified they did not know who shot Angel. The witnesses, however, offered conflicting testimony regarding where defendant was when the shots that killed Angel were fired. Andrea testified defendant said something to the shooter then left for the idling car just before the shots were fired. James testified the shots were fired while defendant and another assailant were fleeing from the home after one of them said Angel should be shot. Chris testified he heard two assailants talking just before the shooting and after the shots were fired, he heard them fleeing the apartment. Reginald also heard two assailants run from the apartment after the shots were fired. A neighbor testified she was across the street and, after hearing gunshots, saw defendant run to a vehicle, sit in the driver's seat, and drive away.

Based on witness testimony, the incident lasted from 45 minutes to two hours. Defendant was later apprehended while fleeing from the area of the shooting. Defendant's firearm was recovered from a yard near the place he was arrested.

In April 2013, defendant pled guilty to voluntary manslaughter with a personal use of a firearm enhancement and four counts of first degree residential robbery. The court sentenced defendant to 29 years in prison.

In October 2021, defendant filed a petition for resentencing pursuant to section 1172.6. An evidentiary hearing was held in September 2023 where defendant's resentencing request was denied. In denying the resentencing request, the trial court

3

acknowledged that "there was some conflicting evidence as to whether [Angel] was shot as the co-defendants were fleeing rather than prior to fleeing." However, there was "no evidence cited" demonstrating "defendant was not an active participant in the crimes committed and was merely present to act as a getaway driver" as defendant contended. The court found the prosecution "presented sufficient evidence to establish beyond a reasonable doubt that [(1)] . . . defendant could still be convicted of murder . . . and [(2)] . . . defendant was a major participant in the crime who acted with reckless indifference to human life."

Defendant appeals.

DISCUSSION

Section 1172.6 permits individuals who plead guilty to manslaughter to file a petition for resentencing if: "(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" and "(2) [t]he petitioner . . . accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder." (§ 1172.6, subd. (a).)

After demonstrating a prima facie case for relief, petitioners are entitled to a hearing to determine whether they are entitled to resentencing. (§ 1172.6, subds. (c), (d)(1).) At this hearing, the prosecution carries the burden of proof to show, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

" 'Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the felony-murder rule to provide: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is

4

liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2 [the statute defining felony-murder special circumstances].”  (§ 189, subd. (e).)  The new law was designed “to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.” ’ ”  (*People v. Njoku* (2023) 95 Cal.App.5th 27, 40.)

## I

### *The Trial Court Did Not Err By Resolving Conflicts Or Assessing Credibility*

Defendant argues the trial court, by relying on a cold record, “inappropriately resolved the conflicts relevant to the issues of whether [defendant] was a major participant [in the crime] and acted with reckless indifference to human life,” violating his due process rights.  Defendant further contends that, in so doing, the trial court incorrectly applied the substantial evidence standard.  We disagree.

We have previously concluded that a trial court’s resolution of evidentiary conflicts contained in a cold record during a section 1172.6 evidentiary hearing does not offend due process.  (*People v. Njoku*, *supra*, 95 Cal.App.5th at pp. 43-47.)  We reasoned:  “ ‘It’s true that it’s unusual to ask the trial judge to sit as the fact finder and (in some cases) make factual determinations on a cold record . . . .  While that is not the ideal position for a fact finder, it is possible to review a trial transcript and reach an opinion about what actually happened.  The Legislature landed on that compromise as a way of extending the ameliorative benefits of its redefinition of murder to people previously convicted under prior law, which [it] judged to be too harsh.  [It] could have directed that qualifying offenders receive a new trial by a new jury on the critical factual questions.

5

But that was impractical for many reasons; the expense would have been enormous and the chances of obtaining live testimony from witnesses who remembered the events from years or decades earlier is small. The Legislature also could have simply refused to make the benefits of the new law available to people already validly convicted under the old law. [It] chose the middle course of requiring trial judges to decide the critical factual questions based—at least in some cases—on a cold record. While the Legislature's compromise is not perfect, it is adequate. And if either party believes it's important to put on live testimony to allow the trial judge to make credibility determinations based on cues other than consistency and plausibility, the statute expressly allows them that opportunity.' " (*Id*. at p. 44, quoting *People v. Clements* (2022) 75 Cal.App.5th 276, 297.)

Defendant attempts to distinguish *Njoku* by pointing to the fact the defendant in *Njoku* was first convicted after a trial whereas he was convicted pursuant to a plea deal. Defendant appears to reason his plea deal makes the testimony from the preliminary examination uncertain and requiring of corroboration for it to be adopted by a trial court following a Penal Code section 1172.6 evidentiary hearing. Not so. To be sure, the trial court may not adopt factual findings based on controverted evidence at the prima facie stage of the felony murder resentencing process. (*People v. Langi* (2022) 73 Cal.App.5th 972, 979-980.) But, Penal Code section 1172.6, subdivision (d)(3) generally permits a trial court to rely on testimony taken from a preliminary examination transcript when determining whether the prosecution has met its reasonable doubt burden *following an evidentiary hearing*. The trial court assesses the testimony from a preliminary examination as it would any other properly admitted evidence. (See *ibid*.) To that end, a fact finder may rely on the direct testimony of a single witness to substantiate any fact. (Evid. Code, § 411.) "Application of the ordinary rules of evidence generally does not impermissibly infringe on a . . . defendant's constitutional rights. [Citation.] Defendant fails to persuade us this case constitutes an exception to that general rule." (*People v.*

6

*Kraft* (2000) 23 Cal.4th 978, 1035-1036; accord, *People v. Prince* (2007) 40 Cal.4th 1179, 1229.)

Defendant's reliance on *People v. Gallardo* (2017) 4 Cal.5th 120 for the proposition a court cannot resolve factual conflicts contained in a preliminary examination transcript is misplaced. *Gallardo* pertains to a trial court's review of a preliminary examination transcript to determine whether a defendant has previously been convicted of a serious felony offense that also qualified as a strike offense. (*Id.* at pp. 123-124.) At a section 1172.6 evidentiary hearing, the trial court is not tasked with determining what a defendant had previously been convicted of but is tasked with assessing the evidence to determine whether a defendant is guilty of murder under current law. (§ 1172.6, subd. (d)(3).) Thus, defendant's argument the court applied an inaccurate standard by resolving conflicts in the cold evidentiary record lacks merit.[3]

To the extent defendant argues the trial court applied a sufficiency of the evidence standard as indicated by the word choice of its oral ruling, defendant does nothing more than italicize the trial court's statements without argument regarding how those statements reflect the court used the wrong standard. Accordingly, this claim is forfeited for failing to cite authority and present appropriate analysis. (*Bayside Auto & Truck Sales, Inc. v. Department of Transportation* (1993) 21 Cal.App.4th 561, 571.) Still, we conclude the trial court used the correct standard as indicated by its recitation of the

---

[3] Defendant points to section 1172.6, subdivision (d)(3)'s exclusion of hearsay evidence as support for his contention the court was prohibited from resolving conflicts in a cold record. Defendant, however, concedes the preliminary examination transcript admitted by the trial court was admissible under section 1172.6 (see *People v. Harris* (2024) 105 Cal.App.5th 623, 632) and he does not claim *specific* evidence considered by the court was inadmissible hearsay. Accordingly, we will not address this contention for defendant's failure to present an articulable argument demonstrating he is entitled to relief. (*Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 629-630.)

relevant statutory authority and detailed analysis of the evidence to find defendant was a major participant and recklessly indifferent during the commission of the home invasion robbery.

## II

*There Was Sufficient Evidence To Demonstrate Defendant*

*Was A Major Participant Who Acted With Reckless Indifference*

Defendant contends there was insufficient evidence to prove he was a major participant in the crime and acted with reckless indifference to human life. We disagree.

"Whether [a defendant] was a major participant in the underlying felonies who acted with reckless indifference to human life is predominantly a factual question reviewable for substantial evidence." (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480.) "In reviewing the trial court's findings for substantial evidence, we apply well-settled principles. 'We " 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt.' " [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' " (*Id*. at p. 480.)

## A

*The Evidence Supports Defendant Was A Major Participant*

" '[M]ajor participation' should be understood as the phrase is used in common parlance, as including those whose involvement is ' "notable or conspicuous in effect or scope" ' and who are ' "one of the larger or more important members . . . of a . . . group." ' " (*People v. Banks* (2015) 61 Cal.4th 788, 800.) Factors commonly considered

are: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.) Whether a defendant acted as a major participant depends on the totality of the circumstances. (*Id.* at p. 802.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Id.* at p. 803.)

Here, the record showed defendant forced the victims to the ground and issued commands to his accomplices throughout the robbery, which lasted between 45 minutes and two hours. While direct evidence failed to provide defendant's and his accomplices' planning activities, the evidence admitted provided circumstantial evidence that defendant was an important member of the group given defendant's accomplices' deference to his commands. Further, while the evidence failed to indicate who supplied the guns used during the home invasion robbery, defendant was in possession of a gun throughout the offense, used the gun to force the victims to comply with his demands, and knew his accomplices were in possession of guns. Defendant also threatened death to one of the victims to achieve compliance. The evidence does not indicate defendant's knowledge regarding the dangerousness of his accomplices, but it does demonstrate defendant was in conversation with the killer shortly before the killing. And while the evidence is conflicting as to whether defendant ordered or saw the shooting, the evidence unquestionably supports the fact defendant was near the shooting when it occurred.

9

Further, defendant did not investigate to see the consequences of the gunshots or offer aid to Angel. Instead, defendant drove the car away from the scene of the crime. Accordingly, the evidence sufficiently showed defendant was a prominent perpetrator of the underlying felony.

B

*The Evidence Supports Defendant Acted With Reckless Indifference*

"Reckless indifference to human life 'requires the defendant be "*subjectively* aware that his or her participation in the felony involved a grave risk of death." ' " (*People v. Banks*, *supra*, 61 Cal.4th at p. 807.) "We analyze the totality of the circumstances to determine whether [a defendant] acted with reckless indifference to human life. Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.] ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

Here, the record showed that: (1) defendant was armed and knew his accomplices were also armed; (2) he was present throughout the duration of the robbery, which lasted for a substantial amount of time; and (3) he either issued or knew of threats to the lives of the victims if they failed to comply with demands. (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.) Further, none of the testimony indicated that defendant took any action to reduce the risk of violence during the felony, regardless of his location during the shooting. Indeed, the evidence showed defendant was near and possibly in conversation with the actual killer right before the shooting. And following the shooting, defendant fled the

10

scene knowing a shot was fired and without checking on the safety of his victims, demonstrating indifference towards their lives.  While none of these factors are required or alone dispositive of defendant's reckless indifference, taken together, they show that the trial court's determination defendant acted with reckless indifference was supported by substantial evidence.

Accordingly, sufficient evidence demonstrated defendant is guilty of murder under current law.

## DISPOSITION

The judgment is affirmed.


/s/_____
ROBIE, Acting P. J.



We concur:



/s/_____
RENNER, J.



/s/_____
FEINBERG, J.

11