Filed 1/15/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>RAUL RODRIGUEZ,<br><br>     Defendant and Appellant. | B333692<br><br>(Los Angeles County<br>Super. Ct. No. PA014564-01) |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed and remanded with directions.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The trial court denied Raul Rodriguez's petition for resentencing (Pen. Code,[1] § 1172.6) on his second degree murder conviction without issuing an order to show cause. Rodriguez appeals, contending the trial court erred when it considered, at the prima facie stage, hearsay testimony given by police officers at Rodriguez's preliminary hearing. We affirm the denial of the petition for resentencing but remand the matter in order to allow Rodriguez 30 days within which he may file an amended resentencing petition.

## BACKGROUND

In 1994, Rodriguez was charged with several crimes, one of which was the murder of Jose Alvaro Salavia (§ 187, subd. (a)).

Three witnesses, all police officers, testified at the preliminary hearing. One officer testified that during his investigation of Salavia's death, he interviewed Rodriguez's mother and uncle. The officer testified Rodriguez's mother told him Rodriguez admitted to her that he killed Salavia. The officer testified that when he spoke with Rodriguez's uncle, who was present at the scene of the shooting but did not see it, the uncle described the events leading up to and after the shooting and said that shortly after the shooting, Rodriguez said, "Damn, I shot him." This hearsay was admissible at the preliminary hearing pursuant to section 872, subdivision (b).[2] None of the other

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    As of the 1994 preliminary hearing, section 872, subdivision (b) provided in relevant part, "Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants

2

evidence tended to demonstrate Rodriguez was at all involved in Salavia's death.

At the preliminary hearing, the defense presented no evidence. The trial court found probable cause to conclude that Rodriguez had committed all the charged offenses.

In November 1994, Rodriguez pleaded guilty to second degree murder.[3] During the change of plea hearing, Rodriguez was not asked to admit to the truth of any factual recitations or to stipulate to the contents of any documents in conjunction with the plea, only to admit that "in truth and in fact" he was guilty. When asked by the court if he joined in the waivers, concurred in the plea and stipulated to a factual basis, defense counsel responded, "I do."

The court found a factual basis for Rodriguez's plea "based upon stipulation of counsel." The remaining charges were dismissed at the People's request. Rodriguez was sentenced to 15 years to life in state prison.

---

made out of court offered for the truth of the matter asserted." (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990).) This portion of section 872, subdivision (b) has since been amended to allow hearsay testimony to be given also by an "honorably retired law enforcement officer." (Stats. 2005, ch. 18, § 1.)

[3] We grant Rodriguez's request for judicial notice of the reporter's transcript from the November 21, 1994 plea hearing. (Evid. Code, §§ 452, 459.) The record before this court does not include a change of plea form, only the reporter's transcript and minute order.

In 2022, Rodriguez filed a petition for resentencing under what is now section 1172.6. Using a pre-printed form, Rodriguez checked the boxes next to statements that correspond to statutory requirements for relief, including statements that he was subject to prosecution and conviction under a now-invalid theory and could not presently be convicted because of changes to California homicide law.

The trial court appointed counsel for Rodriguez, ordered the People to file a response to the petition to assist the court in determining whether Rodriguez had made a prima facie case of entitlement to relief, and gave Rodriguez the opportunity to file a reply to the People's response.

In their response to the petition, the People argued Rodriguez was prosecuted for Salavia's murder as the sole and actual perpetrator, making him ineligible for section 1172.6 resentencing as a matter of law. The People attached the transcript of the preliminary hearing to their response. Rodriguez filed a reply brief in which he did not allege any additional facts, but instead listed types of admissible and inadmissible evidence and asserted he had made a prima facie showing that he was entitled to relief.

Both parties submitted on their papers at the prima facie hearing. The trial court denied Rodriguez's petition for resentencing, stating, "It does appear from everything that I have reviewed that the defendant was the sole and actual perpetrator of the offenses. And therefore, defense having submitted, the court will deny the petition at this time finding that a prima facie case has not been established."

Rodriguez appeals.

# DISCUSSION

## A.    *Resentencing Under Section 1172.6*

"In 2018 . . . , the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.), making, effective as of January 1, 2019, ameliorative changes to our state's homicide law.  [Citation.]  As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime.  [Citations.]  This means, for instance, that a defendant is no longer guilty of murder as an aider and abettor solely because the 'natural and probable consequences' of that other crime included a confederate's commission of murder." (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)

"The Legislature, to provide relief to those with existing murder convictions dependent on theories of the crime it had rejected, devised a path to resentencing."  (*Patton*, *supra*, 17 Cal.5th at p. 558.)  "The current resentencing statute, now codified in section 1172.6 but previously found in section 1170.95" (*ibid.*), provides that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . conviction vacated and to be resentenced on any remaining counts" when three conditions apply.  (§ 1172.6, subd. (a).)  As relevant here, given the nature of Rodriguez's conviction, those enumerated conditions are: (1) the information "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on

5

that person's participation in a crime" (*id*., subd. (a)(1)); (2) the petitioner was convicted of the murder charge or accepted a plea offer in lieu of trial on such a charge (*id*., subd. (a)(2)); and (3) the petitioner "could not presently be convicted" of murder because of the changes to homicide law effective in 2019.  (*Id*., subd. (a)(3); see *Patton*, at p. 558.)

"A petition that includes '[a] declaration by petitioner that the petitioner is eligible for relief . . . , based on all the requirements of subdivision (a),' the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel is facially sufficient and entitles the petitioner to counsel. [Citations.]  A facially sufficient petition also triggers the People's duty to submit a response and the petitioner's right to submit a reply on the question of whether a prima facie case for relief exists.  [Citation.]  'After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.' [Citation.]  If the 'petitioner makes a prima facie showing,' then the trial court issues an order to show cause and holds 'a hearing to determine whether to vacate the . . . conviction and to recall the sentence and resentence the petitioner.' " (*Patton*, *supra*, 17 Cal.5th at pp. 558–559.)

The court's prima facie inquiry is limited but involves more than an inquiry into the petition's mere facial validity.  (*Patton, supra*, 17 Cal.5th at pp. 562–563.)  A "trial court may properly, at the prima facie stage, reference the record of conviction to ' " 'refut[e]' " ' [citation] conclusory allegations in furtherance of its statutorily required screening function at that juncture of a section 1172.6 proceeding." (*Id*. at p. 569.)  As relevant here, the record of conviction includes the charging documents,

preliminary hearing transcript preceding a guilty plea, and the transcript of the change of plea hearing.  (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 864–865 [charging documents part of record of conviction]; *Patton*, at p. 568 [preliminary hearing transcript part of record of conviction]; *People v. Das* (2023) 96 Cal.App.5th 954, 960 [reporter's transcript of a plea part of the record of conviction]; *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028 [plea colloquy part of record of conviction].)

"A trial court may deny a section 1172.6 petition 'at the prima facie stage only if "the petition and record in the case establish *conclusively* that the defendant is ineligible for relief" as a matter of law.'  [Citation.]  We review de novo an order denying a petition on this basis."  (*People v. Hickman* (2025) 110 Cal.App.5th 1262, 1268.)

B.    *Patton*

In *Patton*, the Supreme Court recently examined the prima facie stage of the section 1172.6 procedure in the context of a petitioner who pleaded guilty after a preliminary hearing and prior to trial.  The *Patton* petitioner's initial petition for resentencing relief consisted of a form on which he checked boxes next to statements that corresponded to the statutory requirements for relief, including statements that he was subject to prosecution and conviction under an invalid theory and could not presently be convicted because of the changes to homicide law.  (*Patton*, *supra*, 17 Cal.5th at p. 559.)  The People contested Patton's prima facie showing and sought denial of the petition without an evidentiary hearing.  (*Id*. at p. 560.)  The People, whose task in opposing the prima facie showing is to identify "specific facts within a petitioner's record of conviction—often within the preliminary hearing transcript—showing, in their

7

view, why relief is unavailable . . . referenced a preliminary hearing transcript supporting their contention that Patton was a lone shooter whose conviction did not implicate an invalid theory." (*Id*. at p. 556.)

In response to the People's opposition, Patton "did not challenge this version of events or their consequences; instead, [he] objected to the use of any facts within the preliminary hearing transcript to refute his conclusory allegations of entitlement to relief." (*Patton*, *supra*, 17 Cal.5th at pp. 563–564.) The trial court and the Court of Appeal concluded the transcript disqualified Patton from resentencing because it "reflected he was the sole and direct perpetrator of the shooting such that his conviction was not based on the natural and probable consequences theory. Instead, in the Court of Appeal's words, he was 'convicted, by his plea, under a valid theory of attempted murder.' " (*Id*. at p. 563.)

The Supreme Court granted review to decide whether "a court, in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory, [may] rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations, or would that constitute impermissible judicial factfinding?" (*Patton*, *supra*, 17 Cal.5th at p. 564.) The court concluded looking to the preliminary hearing transcript to refute conclusory allegations is permissible at the prima facie stage. (*Ibid*.)

The Supreme Court began its analysis with existing case law, which "already establishe[d] that ' "if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " ' "

(*Patton, supra,* 17 Cal.5th at p. 564.)  The court observed that conclusory allegations, like the checkbox ones offered by the *Patton* petitioner, "are particularly subject to refutation by the record of conviction," as suggested by *People v. Lewis*'s "emphasi[s] that the prima facie inquiry, to serve its important function of 'distinguish[ing] petitions with potential merit from those that are clearly meritless,' involves looking beyond such legal conclusions to '[t]he record of conviction [which] will necessarily inform the' inquiry."  (*Ibid.*, quoting *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)

The Supreme Court observed that "*Lewis* also noted the importance, drawing from the habeas corpus context, of accepting a ' " 'petitioner's *factual* allegations' " ' as true [citation] as opposed to conclusory ones."  (*Patton, supra,* 17 Cal.5th at p. 564.) Looking to basic rules of pleading and analogizing to the habeas corpus context, where conclusory assertions lacking specific factual allegations do not warrant habeas relief, the court concluded, "It follows from *Lewis* and these hornbook pleading principles that a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing."  (*Id.* at pp. 564–565.)

According to the *Patton* court, when "facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not ' "factfinding involving the weighing of evidence or the exercise of discretion." ' [Citations.]  Indeed, denial of a resentencing petition because its conclusory allegations do not counter the facts in a record of

9

conviction that forecloses relief is a determination that the petition's allegations are legally deficient, 'not a ruling on the merits of the issues which petitioner has attempted to raise.' " (*Patton*, *supra*, 17 Cal.5th at pp. 565–566.)

The Supreme Court rejected the contention that requiring petitioners to present nonconclusory allegations improperly shifts the burden of proof to them, noting that the basic obligation to "frame a disputed issue that entitles that petitioner to an evidentiary hearing" is necessary to enable trial courts to effectively screen out and distinguish clearly meritless petitions at the prima facie stage. (*Patton*, *supra*, 17 Cal.5th at p. 566.) After all, "[t]he ultimate question at the prima facie stage is whether to proceed to an evidentiary hearing." (*Ibid*.) While petitioners at the prima facie stage do not have to "meet an evidentiary burden of proof to establish [their] entitlement to relief," when "confronting a record of conviction that demonstrates relief is unavailable[, they do] have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id*. at pp. 566–567.)

Petitioners can proffer the specific facts necessary to meet their prima facie burden not only in their initial petition, but also in their reply to the People's response to the petition and during argument at the prima facie hearing. (*Patton*, *supra*, 17 Cal.5th at pp. 567–568.) "[S]hould a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed." (*Id*. at p. 567.) "A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify

10

someone else as the direct perpetrator.  At the least, . . . this may come from the record itself.  But absent specific facts, no such dispute arises, as Patton asserts, from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Ibid*.)

The Supreme Court instructed that "the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea." (*Patton*, *supra*, 17 Cal.5th at p. 568.)  The court acknowledged the limitations it had previously imposed on using preliminary hearing transcripts to prove disputed facts.  It noted its ruling in *People v. Reed* (1996) 13 Cal.4th 217 (*Reed*) that "applicable rules of admissibility would circumscribe a preliminary hearing transcript's use as evidence to prove a sentence enhancement at a contested jury trial at which the prosecution bore the burden of proof." (*Patton*, at p. 568.)  It also noted it prohibited courts in *People v. Gallardo* (2017) 4 Cal.5th 120 from independently reviewing preliminary hearing transcripts to resolve disputed facts about convictions resulting from guilty pleas, where that function is within the province of the jury under the Sixth Amendment.  (*Patton*, at p. 568.)  Those limitations, however, are inapplicable in the contest of a prima facie review because the court is not called upon to resolve "a factual dispute in the sense that *Reed* or *Gallardo* addressed," but to ascertain the premise for the conviction.  (*Id*. at pp. 568–569.)  Here, "statements within Patton's preliminary hearing transcript contributed specific factual assertions about his conviction—namely, that it was premised on him being the sole shooter." (*Id*. at p. 569.)

11

Notably, the Supreme Court clarified that at the prima facie stage of the resentencing process, courts may look to preliminary hearing transcripts regardless of whether the petitioners stipulated to the transcript or its contents in the course of entering their guilty pleas. (*Patton*, *supra*, 17 Cal.5th at p. 569.) This is because preliminary hearing transcripts play an "issue-framing role" at the prima facie stage that does not depend on whether a defendant, in an earlier plea colloquy, admitted the truth of testimony contained therein or stipulated to the transcript as the factual basis of a plea. (*Id*. at p. 569 & fn. 12.) The court noted, "The absence of such a stipulation during an earlier plea colloquy does not eliminate this [issue-framing] role." (*Id*. at p. 569.)

Applying these principles to Patton's resentencing petition, the Supreme Court found no error in dismissing the petition at the prima facie stage. "Patton offered only conclusory allegations of entitlement to resentencing relief under section 1172.6 in response to a record of conviction that the lower courts viewed as foreclosing it because that record foreclosed the conclusion that Patton's conviction was under a now-invalid homicide theory. Patton's petition contains only a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing. After determining the facial validity of a resentencing petition and before ordering an evidentiary hearing, a trial court may properly, at the prima facie stage, reference the record of conviction to ' " 'refut[e]' " ' [citation] conclusory allegations in furtherance of its statutorily required screening function at that juncture of a section 1172.6 proceeding. The Court of Appeal correctly concluded this is not impermissible factfinding and

12

correctly concluded Patton had not, on the record before it, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 569.)

C.    *Patton's Application to the Present Case*

This case bears tremendous similarity to *Patton*. Here, as in *Patton*, the resentencing petition was a form on which Rodriguez checked a series of boxes to assert his claim of entitlement to resentencing. The People opposed the petition for resentencing on the ground that Rodriguez was prosecuted as the sole and actual perpetrator, just as they had in *Patton*, and they, too, referenced the preliminary hearing transcript to support their contention that Rodriguez was a lone shooter whose conviction did not implicate an invalid theory. And like the petitioner in *Patton*, Rodriguez did not make any specific, nonconclusory factual allegations, either in his reply brief or at the prima facie hearing, to satisfy his burdens of framing a disputed issue that entitled him to an evidentiary hearing and alerting the prosecution and the court to what issues an evidentiary hearing would entail.

In fact, we identify only one potentially significant distinction between this case and *Patton*: in *Patton*, the Court of Appeal disregarded the hearsay evidence admitted at the preliminary hearing pursuant to section 872, subdivision (b) and relied only on other preliminary hearing evidence. (*Patton*, *supra*, 17 Cal.5th at p. 557, fn. 2.) The Supreme Court noted the lower court's choice but stated that "[w]hether this choice was correct does not affect the outcome of this case." (*Ibid*.) Here, however, whether a court may rely on section 872, subdivision (b) hearsay within that transcript when performing a prima facie review is determinative, because other than the police officer's hearsay testimony at the preliminary hearing, the record of

13

conviction includes no information that could shed light on the theory under which Rodriguez was convicted.

Applying *Patton* here, we are not convinced the basis for admissibility of evidence at the preliminary hearing makes any difference to the utility or function of the transcript in the prima facie review. Using preliminary hearing transcripts at the prima facie stage of the resentencing process to determine the theory under which the petitioner was convicted is not impermissible judicial factfinding because the court is not "resolving a contested factual dispute" but looking to statements within the transcript for "specific factual assertions about his conviction—namely, that it was premised on him being the sole shooter." (*Patton*, *supra*, 17 Cal.5th at pp. 564–569.) Because the court at the prima facie stage consults the preliminary hearing transcript only for its "issue-framing role" (*id.* at p. 569), it does not matter whether the petitioner, when pleading guilty, admitted the truth of testimony in the transcript or stipulated to it as the factual basis of the plea. (*Id.* at p. 569 & fn. 12.) Whether stipulated to or not, the transcript frames the issues. (*Id.* at p. 569.) *Patton*'s reasoning leads us to the conclusion that it similarly does not matter whether evidence was admitted at the preliminary hearing under section 872, subdivision (b) or under another provision of the Evidence Code. Whatever the legal basis for the admission of the evidence, the value of the preliminary hearing transcript as an issue-framing device is unchanged. In both this case and in *Patton*, the transcript contributed specific factual assertions about the underlying conviction—specifically, that it was based on Patton and Rodriguez acting as the sole shooter in their respective crimes.

14

Nonetheless, Rodriguez argues that hearsay made admissible at the preliminary hearing by section 872, subdivision (b) should not be considered at the prima facie stage of resentencing because it is not admissible at the evidentiary hearing unless another exception to the hearsay rule applies. (§ 1172.6, subd. (d)(3).)  This argument is premised on *People v. Flores,* in which the court ruled that because section 1172.6, subdivision (d)(3) bars the admission of factual summaries from prior appellate opinions at the at the evidentiary hearing, the summaries also could not be considered at the prima facie stage. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, disapproved on other grounds by *Patton*, *supra*, 17 Cal.5th at p. 569 & fn. 12.) The *Flores* court reasoned, "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*Ibid*.; see also *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183 [as the factual summary in an appellate opinion may not be considered at the evidentiary hearing, "[b]y logical extension, the factual summary also may not be used to determine a petitioner's eligibility at the prima facie stage"]; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238 [same].)

This argument has great intuitive appeal.  How can evidence inadmissible at the evidentiary hearing be used to deny a petitioner an evidentiary hearing?  But we cannot reconcile this contention with *Patton*'s reasoning.  Central to *Patton*'s ruling that the preliminary hearing transcript may be consulted at the prima facie stage is that no factfinding or weighing of evidence occurs at this stage—the court is simply referring to the record of

15

conviction to frame the issues. (*Patton*, *supra*, 17 Cal.5th at pp. 566–567, 569.) Indeed, if a question of material fact exists, the petition cannot be resolved at the prima facie stage, and an order to show cause must issue. (*Id.* at p. 567.)

In contrast, at the evidentiary hearing the People have the substantive burden of proving beyond a reasonable doubt that the petitioner is currently guilty of murder or attempted murder under California law as amended by the changes to homicide law effective January 1, 2019. (§ 1172.6, subd. (d)(3).) Evidentiary rules are necessary for an evidentiary hearing, and the Legislature supplied them, including a prohibition on the use of section 872, subdivision (b) hearsay unless the hearsay is admissible under a different exception to the hearsay rule. (§ 1172.6, subd. (d)(3).) Notably, the Legislature did not choose to impose this prohibition at the prima facie stage. The Legislature's choice to include language in section 1172.6, subdivision (d)(3) but not elsewhere in section 1172.6 demonstrates the Legislature knows how to include this provision in the law when it wants to do so and suggests it did not intend to incorporate it elsewhere in the statute. (*People v. Arellano* (2024) 16 Cal.5th 457, 470–471 [legislative decision to mention "allegations and enhancements" in § 1172.6, subd. (d)(3) but not in § 1172.6, subd. (e) "suggests the Legislature did not intend to grant courts the authority to make findings and impose uncharged and unproven allegations and enhancements" when resentencing under § 1172.6, subd. (e)].) Because the trial court answers fundamentally distinct questions at the different stages of the resentencing process, we think it reductive to say that because the third stage follows the second stage, the statutory evidentiary rules for the third stage must be imported to the

16

second stage despite the Legislature's choice not to do so.  Rather, *Patton* suggests there is neither a need nor a logical reason to import evidentiary rules from a different part of the section 1172.6 resentencing process to the non-evidentiary, non-factfinding prima facie stage.

Rodriguez also argues that under *Reed*, section 872, subdivision (b) hearsay should not be considered part of the record of conviction and thus may not be considered at the prima facie stage.  In *Reed*, the California Supreme Court stated that a preliminary hearing transcript is part of the record of conviction and "reliably reflect[s] the facts of the offense for which the defendant was convicted . . . because the procedural protections afforded the defendant during a preliminary hearing," specifically the right to confront and cross-examine witnesses, the requirement that witnesses testify under oath, and the recording of the hearing by the court reporter, "tend to ensure the reliability of such evidence."  (*Reed*, *supra*, 13 Cal.4th at p. 223.) Rodriguez points out the preliminary hearing evidence here consisted solely of section 872, subdivision (b) hearsay, such that none of the declarants were under oath nor could he cross-examine them.  He contends that because the procedural protections identified in *Reed* were absent here, the preliminary hearing transcript is not part of the record of conviction and may not be considered for any purpose.

The Supreme Court cited *Reed* in *Patton*, but it did not interpret *Reed* as standing for the idea that preliminary hearing transcripts should be considered on a case-by-case basis to determine whether they include sufficient procedural protections to warrant inclusion in the record of conviction.  Rather, the Supreme Court cited *Reed* to support the statement, "Finally,

17

there is no dispute that the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea." (*Patton*, *supra*, 17 Cal.5th at p. 568.) Moreover, the Supreme Court ruled in *Patton* that *Reed*'s limitations on the use of preliminary transcripts to prove disputed facts were not applicable in the prima facie review context because the "resolution of the prima facie inquiry in Patton's case did not call for resolution of a factual dispute in the sense that *Reed* . . . addressed." (*Id*. at pp. 568–569.) Rather than using the transcript to resolve contested factual issues as in *Reed*, the transcript was used in *Patton* to identify specific facts about Patton's *conviction*, specifically that it was founded on the theory that he was the actual killer and acted alone. (*Id*. at p. 569.)

Here, Rodriguez's conclusory allegations of entitlement to resentencing relief under section 1172.6 were insufficient to make a prima facie showing for an evidentiary hearing and resentencing relief. The People refuted his conclusory checkbox allegations with a contrary showing: "statements within the preliminary hearing transcript that contributed specific factual assertions about his conviction—namely, that it was premised on him being the sole shooter." (*Patton*, *supra*, 17 Cal.5th at p. 569.) When confronted with a record of conviction that demonstrated that relief was unavailable, Rodriguez did not meet his "burden of coming forward with nonconclusory [factual] allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id*. at p. 567.) The trial court did not err in concluding Rodriguez failed to meet his prima facie burden. As the Supreme Court explained in *Patton*, while this burden is a bar that is set very low, a petitioner must nonetheless make a

18

prima facie showing to "frame a disputed issue that entitles that petitioner to an evidentiary hearing." (*Id*. at p. 566.)

At oral argument, Rodriguez requested an order remanding the case to the trial court to afford him the opportunity to file an amended petition. (See *Patton*, *supra*, 17 Cal.5th at p. 569 [ordering, out of an abundance of caution, a remand with directions for the trial court to consider an amended petition should the defendant file one within 30 days of remand].) Because Rodriguez did not have the benefit of *Patton* when he filed his resentencing petition, we remand the matter to allow him 30 days within which to file an amended petition with nonconclusory allegations showing he is eligible for relief under section 1172.6. We express no opinion on the viability of any additional facts Rodriguez might allege.

## DISPOSITION

The order denying Rodriguez's petition for resentencing is affirmed. We remand the matter with directions to the superior court to consider an amended petition should Rodriguez, within 30 days of remand, file one.

## CERTIFIED FOR PUBLICATION


STRATTON, P. J.

We concur:



WILEY, J.                          VIRAMONTES, J.


19